328 So.2d 140 (1976)
John McCORMICK and Ernie Ray Clanton
v.
Elayn HUNT.
No. 56907.
Supreme Court of Louisiana.
February 23, 1976.
*141 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Ralph E. Tyson, Asst. Attys. Gen., Ossie Brown, Dist. Atty., James E. Boren, Asst. Dist. Atty., for defendants-relators.
Vincent Wilkins, Jr., Director, Benjamin E. Smith, New Orleans, Roland T. Huson, III, App. Counsel, Baton Rouge, for plaintiff-respondent.
DIXON, Justice.
We granted the State's application for writs in this case to review a ruling of the trial judge that the Department of Corrections must award prisoners "good time" credits for "jail time," that is, time spent in a parish prison after arrest, but prior to conviction and sentence. We reverse.
R.S. 15:571.3 B provides:
"Every inmate in the custody of the Department of Corrections who has been convicted of a felony and sentenced to imprisonment for a stated number of years or months may earn a diminution of sentence by good behavior and performance of work or self improvement activities or both to be known as `good time.' Those inmates serving life sentences will be credited with good time earned which will be applied toward diminution of their sentences at such time as the life sentences might be commuted to a specific number of years. The director of corrections shall establish procedures for awarding and recording of good time and shall determine when good time has been earned toward diminution of sentence. The amount of diminution of sentence allowed shall be as otherwise provided by law."
The very words of the statute make it clear that it does not apply to time served in a parish prison after arrest while awaiting trial, since at that time the accused is not an "inmate in the custody of the Department of Corrections who has *142 been convicted of a felony and sentenced to imprisonment." Therefore, unless some constitutional right mandates that "good time" be awarded for jail time, there is no merit in petitioners' contentions.
Petitioners argue that the failure to award good time credits for jail time violates the constitutional guarantee of equal protection of the law, because an accused who can afford bail actually serves less time in jail than an accused who cannot afford bail.[1] This same argument was presented to the United States Supreme Court in McGinnis v. Royster, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973). In that case, New York did not award good time on jail time in computing the minimum date that an inmate could appear before the parole board. In reversing a lower court ruling that the state scheme violated the equal protection clause, the Supreme Court stated:
". . . As the statute and regulations contemplate state evaluation of an inmate's progress toward rehabilitation, in awarding good time, it is reasonable not to award such time for pretrial detention in a county jail where no systematic rehabilitative programs exist and where the prisoner's conduct and performance are not even observed and evaluated by the responsible state prison officials. Further, it would hardly be appropriate for the State to undertake in the pretrial detention period programs to rehabilitate a man still clothed with a presumption of innocence. In short, an inmate in county jail is neither under the supervision of the State Correction Department nor participating in the State's rehabilitative programs. Where there is no evaluation by state officials and little or no rehabilitative participation for anyone to evaluate, there is a rational justification for declining to give good-time credit." 410 U.S. 263, 271, 93 S.Ct. 1055, 1060, 35 L.Ed.2d 282.
The equal protection clause does not require absolute equality or precisely equal advantages. Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). As stated in Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970):
"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some `reasonable basis,' it does not offend the Constitution simply because the classification `is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369. `The problems of government are practical ones and may justify, if they do not require, rough accommodations-illogical, it may be, and unscientific"Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69-70, 33 S.Ct. 441, 443, 57 L.Ed. 730. `A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393."
The United States Supreme Court in Lindsley v. Natural Carbonic Gas Co., 220 *143 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1910), laid down the rules to be used in determining whether a legislative enactment violated the equal protection clause:
"The rules by which this contention must be tested, as is shown by repeated decisions of this court, are these: 1. The equal-protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." (Citations omitted).
In the instant case, petitioners have not shown the absence of a reasonable distinction between those incarcerated in the State prison serving their sentences after conviction and those in the parish prison awaiting trial.
The lower federal courts have consistently held that good time need not be awarded for jail time. See Blackshear v. United States, 434 F.2d 58 (C.C.A.5 1970); Aderhold v. Ellis, 84 F.2d 543 (C.C.A.5 1936), cert.den., 299 U.S. 587, 57 S.Ct. 123, 81 L.Ed. 433 (1936); Swope v. Lawton, 83 F.2d 814 (C.C.A.9 1936).
As stated in Bandy v. Willingham, 398 F.2d 333, 335 (C.C.A.10 1968), cert. den., 393 U.S. 1006, 89 S.Ct. 497, 21 L.Ed.2d 470 (1968):
"The seventh claim is that appellant should have received good time credit from the date of his arrest in 1959. This claim is without merit. Good time credit cannot be earned until the prisoner commences service of his sentence. 18 U.S.C.§4161."
The purpose of good time is two-fold: to promote work and self improvement, and to serve as a disciplinary tool for prison officials. Parish jails, unlike the State institutions, generally serve as detention centers only, holding those accused of crime who cannot post bail while awaiting trial.
The awarding of good time is a matter of state law, not a federal constitutional right. Holtzinger v. Estelle, 488 F.2d 517 (C.C.A.5 1973). The legislature has seen fit to award good time only to an inmate "in the custody of the Department of Corrections who has been convicted of afelony." An accused awaiting trial is not an inmate who has been convicted of anything. Therefore, the good time statute does not apply, and the classification violates no federal constitutional guarantee. McGinnis v. Royster, supra.
Accordingly, the judgment of the trial court is reversed and the demands of petitioners for the issuance of a writ of mandamus are denied.
NOTES
[1] Assume A and B are arrested together for simple robbery on January 1, 1975. A makes bail and is released pending trial. B cannot make bail and is incarcerated in the parish jail awaiting trial. Both men go to trial on January 1, 1976, are convicted, and sentenced to five years imprisonment. A, who posted bond, serves two years, eight months and twenty-one days in jail, with maximum good time. B, who could not post bond, receives credit for the year in jail. C.Cr.P. 880. His stay at Angola will be two years, two months and five days with maximum good time. Thus B serves approximately six months longer in over-all jail time than A.