**The PEOPLE of the State of Colorado,**
**Plaintiff-Appellee,**

**v.**

**Harold TURMAN, Claude Richard Cory,**
**Defendant-Appellant.**

**No. 82SA243.**

Supreme Court of Colorado,
En Banc.

Feb. 22, 1983.
Rehearing Denied March 14, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Mary Ricketson, Nathan B. Coats, Asst. Attys. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Jody Sorenson Theis, Deputy State Public Defender, Denver, for defendant-appellant.

ROVIRA, Justice.

Defendants Harold Turman and Claude Cory appeal from a decision of the Arapahoe County District Court denying their motions to vacate and set aside their sentences pursuant to Crim.P. 35 and for an order to grant good-time allowances for pretrial commitment.[1]  We affirm.

### I.

On August 16, 1979, Cory was sentenced to a term of imprisonment of from 8 years 364 days to nine years at Canon City for aggravated robbery.  On October 17, 1979, Turman was sentenced to a term of from ten to sixteen years at Canon City for first-degree assault.  The crimes for which they were sentenced were committed before July 1, 1979, and both were given credit for presentence confinement.[2]

They subsequently filed motions pursuant to Crim.P. 35.  Turman denominated his request a "Motion to Vacate and Set Aside Sentence," and Cory entitled his a "Motion for an Order to Grant Good-Time Allowances for Pre-Trial Commitment."  Turman's motion named the People as plaintiff. James Ricketts, Director of Corrections, and Lena Dice, Supervisor of Time Computation, were named respondents in Cory's motion.  The People stipulated that both Turman and Cory were indigent at the time of their arrest and that their indigency prevented them from posting bail.

---

1. These appeals were transferred from the court of appeals because of a constitutional challenge.  Sections 13–4–102(1)(b) and 13–4–110(1)(a), C.R.S.1973.

2. Cory was given credit for 147 days, and Turman was given credit for 153 days against the maximum sentence only.

The thrust of their argument before the trial court was that they were entitled to good-time credit for the time they spent in presentence confinement.[3] They argued that to deny them such credit would require them to spend a longer period incarcerated than a person who had received the same sentence but who had been able to post bail before being sentenced. They claimed that such a result deprived them of equal protection of the law.

The trial court, after finding that the Department of Corrections (Department) was not made a party (although it was advised of the Rule 35 proceeding brought by Cory), denied the defendants' motions on the ground that because it did not have jurisdiction over the Department or its employees, a Crim.P. 35 proceeding was inappropriate.

## II.

Crim.P. 35(c)(2) affords every person convicted of a crime the opportunity for postconviction review on the grounds that the sentence was imposed in violation of the constitutions or laws of the United States or of Colorado; or that the sentence imposed exceeded the maximum authorized by law, or was not in accordance with the sentence authorized by law; or that the sentence imposed has been fully served.

Crim.P. 35(c)(3) allows an aggrieved person claiming a right to be released to request the court that imposed the sentence to vacate, set aside or correct the sentence, or to make such order as necessary to correct a violation of his constitutional rights. The rule further provides that if a person is entitled to postconviction relief the court shall vacate and set aside the judgment, impose a new sentence, discharge the prisoner, or make such orders as are appropriate to restore a right that was violated.

The rule affords a convicted person the remedies that are available through a writ of habeas corpus, and a proceeding under Crim.P. 35(c) is governed by equitable principles. *People v. Trujillo,* 190 Colo. 497, 549 P.2d 1312 (1976).

A Crim.P. 35 proceeding is but one phase of a criminal proceeding. *Bresnahan v. District Court,* 164 Colo. 263, 434 P.2d 419 (1967). Whether the court has jurisdiction to grant the relief requested must be determined by an analysis of the provisions of Crim.P. 35(c)(2) and (3). We have often looked to the American Bar Association *Standards for Criminal Justice* for guidance in the area of postconviction remedies. *See People v. Hampton,* 187 Colo. 131, 528 P.2d 1311 (1974); *People v. Bucci,* 184 Colo. 367, 520 P.2d 580 (1974). The commentary to standard 22–2.1 indicates clearly that protection of constitutional rights requires that postconviction remedies be broad and flexible. *ABA, Standards for Criminal Justice* 22–2.1 (1980). Here the defendants have alleged that their constitutional rights to equal protection have been violated by the statute relating to good-time credit. Our reading of Rule 35(c)(2) leads us to the conclusion that the court had jurisdiction to

**3.** Cory stated his case as follows:

"Your Honor, the sentence you handed down was an 8 year 364 days to 9 year sentence, and the way they compute that is that on a 9 year sentence you do 4 years 5 months and 7 days with good time allowance. With the 147 days credit you gave me, the 147 days away from the 9 years leaves me with 8 years 218 days. They compute the sentence from that point, so I am going to end up doing 4 years 8 months and 12 days, or 3 months and 5 days longer than a person who was able to make bond, get sentenced, and then be transported to the prison with an exact same sentence.

"Under the new sentencing law where a person does half his time and does an automatic one year of parole, say two people get 4 year sentences and one person is able to maintain himself on bail prior to being sentenced, the other person does say 6 months in the county jail prior to going to prison or being sentenced. Take the 6 months off that 4 years, he does a 3½ year sentence as far as the prison is concerned and they divide that by 2 so he does 21 months there, plus the 6 months he did in the county, or a total of 27 months.

"The person who was able to maintain himself on bail prior to being sentenced winds up doing exactly 24 months, and our premise for bringing this case is the denial of equal protection to those who are poor and unable to make bond."

consider whether the defendants' constitutional rights were being denied. Consequently, we believe that the trial court was in error in holding that it had no jurisdiction because the Department was not a party.

### III.

Section 17–20–107, C.R.S.1973 (1978 Repl. Vol. 8), effective at the time of the commission of the defendants' crimes, provided:[4]

"[E]very prisoner confined in the state penitentiary who has committed no infraction of the rules or regulations of the prison or the laws of the state and who performs in a faithful, diligent, industrious, orderly, and peaceable manner the work, duties, and tasks assigned to him to the satisfaction of the superintendent may be allowed time credit reductions. . . ."

The defendants contend that the failure of the Department to credit them with good time for the period spent in pretrial confinement denies them equal protection of the laws in violation of the fourteenth amendment to the United States Constitution and article II, section 25, of the Colorado Constitution. The basis of this claim is that section 17–20–107 requires them to serve more time in confinement than persons who received the same sentence, but who were not indigent and were therefore able to make bail.

### A.

At the outset of our equal protection analysis, we must determine the level of scrutiny to be applied. If we find that a fundamental right or a suspect class is involved, we must apply a "strict scrutiny" analysis, under which the legislative provision, if it is to stand, must be supported by a "compelling state interest." *Harper v. Virginia Board of Elections,* 383 U.S. 663,

86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). Otherwise, we apply a "rational basis" test, under which the provision will be upheld if it is rationally related to a legitimate state interest. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

With respect to the "fundamental right" question, the United States Supreme Court has held that there is no constitutional right to good-time credit. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Moreover, we have been unable to find any jurisdiction that holds that there is such a right. The United States Supreme Court has held that "[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.'" *Id.* at 555, 94 S.Ct. at 2974 (quoting *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed.2d 1356 (1948)). If we were to view the withholding of good-time credits as the withholding of a fundamental liberty, we would be imposing an onerous burden on our corrections system. That is, before the state may deprive a citizen of a fundamental right, it must accord him a plethora of constitutional protections that may be incompatible with the efficient administration of a penal institution. Consequently, although the question of good-time credits does implicate a liberty interest, we are unwilling to conclude that it is a fundamental one. Therefore, we decline to employ a strict scrutiny analysis based upon the denial of a fundamental right.

The defendants urge more forcefully that section 17–20–107 is constitutionally infirm because it discriminates against a suspect class—the indigent.[5] Contrary to the con-

---

4. This statute, as amended, remains in effect for those persons convicted of crimes committed prior to July 1, 1979. For persons convicted of crimes committed on or after July 1, 1979, see article 22.5 of title 17, C.R.S.1973 (1982 Supp.).

5. We note that the classification is not, strictly speaking, one based upon wealth; instead, it is one based upon whether the defendant was subjected to presentence confinement. As noted in *Godbold v. District Court,* 623 P.2d 862, 863 n. 9 (1981):

tentions of the defendants, however, the United States Supreme Court has never held that indigency is a suspect class. *See* G. Gunther, *Constitutional Law* 961 (10th ed. 1980); L. Tribe, *American Constitutional Law* 1098 (1979).

The cases cited by defendants do not support the conclusion that wealth is a suspect class under the equal protection clause even in the context of the criminal justice system. For example, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), was not an equal protection case at all. It held that the right to counsel guaranteed by the sixth amendment was made applicable to the states by the fourteenth amendment and that as a matter of due process the state was required to furnish counsel to indigents. *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), decided the same day as *Gideon,* relied on the equal protection clause in holding that indigents have a constitutional right to appointed counsel on appeal. The *Douglas* opinion did not, however, address the level of scrutiny involved, although if it used a strict scrutiny analysis, it was almost certainly on the basis of the existence of a "fundamental right," rather than on the basis that a "suspect class" was involved. The plurality opinion in *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), holding that indigents have a right to a free transcript on appeal, was based upon both the equal protection clause and the due process clause. Strict scrutiny analysis was apparently not used, the Court finding that the challenged procedure bore "no rational relationship to a defendant's guilt or innocence." *Id.* at 17–18, 76 S.Ct. at 590. Likewise, the cases of *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971),

did not declare indigents a suspect class. Consider the following excerpt from *Tate:*

"Imprisonment in such a case is not imposed to further any penal objective of the State. It is imposed to augment the State's revenues but obviously does not serve that purpose...."

401 U.S. at 399, 91 S.Ct. at 671. This is a classic "rational basis" analysis and will not support the conclusion that strict scrutiny was employed.

■ The defendants' reliance on the above cases is not well founded considering that the United States Supreme Court held, more recently than any of the cases discussed in the preceding paragraph, that a rational basis test should be used in determining whether a denial of good-time credit for presentence confinement is a violation of the equal protection clause. *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973). With respect to the question of the level of scrutiny to be employed, there is no difference between the facts in *McGinnis* and those in the case at bar.[6]

*McGinnis* recognized the difficulties inherent in the administration of penal systems and observed that " '[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' " *Id.* at 270, 93 S.Ct. at 1059 (quoting *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913)). The defendants thus ignore clear United States Supreme Court precedent and instead choose to rely on tenuous analogies, thereby pretending that the Supreme Court has established the rules they invoke. It should also be noted that the majority of states that have considered this question have employed a rational basis

"[I]n those cases where the facts warrant that bail be set in a high amount in order to insure the defendant's presence at trial, it cannot be said that indigency is the sole reason for presentence confinement. In those cases, the amount of bail may be such that even a 'man of means' cannot or will not post the required bond."

Moreover, in nonbailable offenses, the defendant's financial situation is unrelated to his presentence confinement. *See* section 16–4–101, C.R.S.1973 (1982 Supp.).

6. Justice Douglas, dissenting in *McGinnis,* did not quarrel with the majority's use of the rational basis test. His objection was that the statute did not meet the test.

test. *See, e.g., Hampton v. Rowe,* 88 Ill. App.3d 352, 43 Ill.Dec. 511, 410 N.E.2d 511 (1980) (struck down law); *McCormick v. Hunt,* 328 So.2d 140 (La.1976) (upheld law). *But see People v. Sage,* 26 Cal.3d 498, 611 P.2d 874, 165 Cal.Rptr. 280 (1980) (struck down law under strict scrutiny analysis).

We thus conclude that this case is properly analyzed using the rational basis test.

### B.

We now must examine the statutory scheme to determine whether it is supported by a rational basis. The statute draws a line between those persons who remain in jail before conviction and those persons who make bail. The legislature has devised a system that encourages discipline and rehabilitation and rewards those who make an effort to conduct themselves in a constructive manner. *See* sections 17–20–104 (reduced time for good conduct), 17–20–105 (trusty prisoners), 17–20–113 (behavior certificate—restoration of citizenship), C.R. S.1973 (1978 Repl.Vol. 8 and 1982 Supp.).

■ The defendants argue that because the state's interest in maintaining discipline in jails is the same as its interest in maintaining discipline in prisons, it is irrational to distinguish between time served in the two places with respect to the granting of good-time credit. Although it is true that the state has an interest in maintaining discipline in both places of incarceration, it does not necessarily follow that any difference in the means of maintaining it is irrational. The legislature might well have concluded that an added incentive for good behavior is necessary after conviction and sentencing, but that such an incentive is not necessary when the pretrial detainee has before him the prospect of a sentencing hearing in which the judge may consider his behavior while incarcerated.[7] *See Godbold v. District Court,* 623 P.2d 862 (Colo.1981) (Quinn, J., dissenting) (misconduct during

presentence confinement may be pertinent to sentencing decision, and sentencing judge may consider it in fixing term of sentence). *See also* section 18–1–105(9)(a)(V), C.R.S.1973 (1982 Supp.); *People v. Phillips,* 652 P.2d 575 (Colo.1982); *People v. Scott,* 630 P.2d 615 (Colo.1981) (factors that may be considered by sentencing judge).

In *McGinnis v. Royster, supra,* the Court considered a New York statute that denied state prisoners good-time credit for presentence incarceration. It upheld the statute against an equal-protection challenge, finding that rehabilitation programs offered in a state correctional facility and a disciplinary purpose were both valid reasons to limit an award of good-time credit to prisoners in state facilities. In disposing of an argument that rehabilitation was not the primary purpose of the good-time credit classification, but rather that the legislature's primary aim was to foster and maintain discipline, the Court stated: "[Y]et, our decisions do not authorize courts to pick and choose among legitimate legislative aims to determine which is primary and which subordinate. . . . So long as the state purpose upholding a statutory class is legitimate and nonillusory, its lack of primacy is not disqualifying."

■ In Colorado, one of the purposes of sentencing is rehabilitation. *See* section 18–1–102.5(d), C.R.S.1973 (1982 Supp.). The legislature has formulated a program whereby correctional officials are given an opportunity to evaluate a person's conduct and rehabilitative efforts before he is eligible for release and to reward those who observe the rules and regulations and faithfully perform assigned duties.

■ In a long line of cases we have held that there is no constitutional right to credit for presentence confinement. *See, e.g., Godbold v. District Court,* 623 P.2d 862 (Colo.1981); *Perea v. District Court,* 199

---

**7.** It should be noted that *People v. Sage,* 26 Cal.3d 498, 611 P.2d 874, 165 Cal.Rptr. 280 (1980), which invalidated a California scheme that did not allow good-time credit for presentence confinement of accused felons, is distinguishable in this regard. The California plan provided good-time credit for presentence confinement of misdemeanants, but not felons. Consequently, the California court rejected the above justification.

Colo. 27, 604 P.2d 25 (1979); *People v. Martinez,* 192 Colo. 388, 559 P.2d 228 (1977); *People v. Johnson,* 185 Colo. 285, 523 P.2d 1403 (1974); *People v. Nelson,* 182 Colo. 1, 510 P.2d 441 (1973); *People v. Coy,* 181 Colo. 393, 509 P.2d 1239 (1973); *People v. Scott,* 176 Colo. 86, 489 P.2d 198 (1971); *People v. Jones,* 176 Colo. 61, 489 P.2d 596 (1971). We have consistently rejected the arguments of defendants that the decisions in *Williams v. Illinois, supra,* and *Tate v. Short, supra,* mandated our creation of such a right. These two cases held that it was unconstitutional to require an indigent defendant unable to pay a monetary fine to spend more time incarcerated than a defendant who could afford to pay. We have held that in order for us to accept the arguments of defendants that these cases are controlling we would have to conclude that presentence confinement is punishment and that an order fixing monetary bail is unconstitutional *per se. People v. Jones, supra.* We have been unwilling to reach such a conclusion.

Acceptance of the defendants' argument in this case would require us to do one of two things. First, we could overrule the entire line of cases from *People v. Jones, supra,* to *Godbold v. District Court, supra.* However, we believe the doctrine of *stare decisis* deserves more deference than would be accorded it by our overruling of over a decade of considered decisions. Second, we could distinguish those cases from the case at hand. We could conclude that, although there is no constitutional right to credit for presentence confinement, if the legislature chooses to extend any credit for presentence confinement, it must extend the full panoply of credit that may be earned in a facility under the control of the Department of Corrections.[8] That is, there is a constitutional right to good-time credit for presentence confinement that arises only if credit is granted for time actually served in such confinement. We see no reason why the legislature may not constitutionally extend credit for time actually served in presentence confinement, while allowing good-time credit only for time spent in a correctional facility under the jurisdiction of the Department.

■ We are not unmindful of the fact that there may be a certain amount of inequity inherent in the present system. It may not be equitable for a person who has spent time in pretrial confinement to spend more total time in confinement than one who was free on bail and who after conviction received an identical sentence. It is certainly not equitable that a person who is ultimately acquitted will spend time in confinement that another acquitted defendant who made bail would not spend. Not every inequity, however, is sufficient to render a system unconstitutional.

■ The legislature has made a policy decision. That we might believe the decision it reached was not the best, or that we might have reached a different decision, or even that we might believe the decision incorrect, does not entitle us to overrule the decision of a coordinate branch of government absent a firm conviction that the decision is irrational. In our opinion, the legislative scheme bears a rational relationship to the legitimate state interest in rehabilitation and discipline and does not deny the defendants equal protection of the laws.

The judgment of the district court as to both defendants is affirmed.

DUBOFSKY, QUINN and NEIGHBORS, JJ., concur in part and dissent in part.

DUBOFSKY, Justice, concurring in part and dissenting in part:

I join Justice Quinn's concurrence and dissent with the exception that I do not join the dissenting opinion of Justice Neighbors because I believe the statutory classification violates equal protection of the laws under a rational relationship analysis, and there-

---

**8.** It should be noted that section 16–11–306, C.R.S.1973 (1978 Repl.Vol. 8), at issue in our cases holding that there is no constitutional right to credit for presentence confinement, was amended effective July 1, 1979, to grant a statutory right to such credit. Colo.Sess.Laws 1979, ch. 157, 16–11–306 at 665.

fore, it is unnecessary to consider whether the classification is a suspect one.

QUINN, Justice, concurring in part and dissenting in part:

I concur in Part II of the court's opinion. I, however, dissent from Part III of the opinion, and, in this respect, I join the dissenting opinion of Justice Neighbors. I write separately only to add some additional observations on why I believe the failure to accord these defendants credit for statutory good time violates equal protection of the laws under even the rational basis standard of review.[1] I find no reasonable nexus between the denial of good time credits for presentence confinement and the asserted governmental interests in rehabilitation and institutional discipline. For this reason I do not believe the Supreme Court's decision in *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973), should control the result here.

I.

In *McGinnis,* the Supreme Court considered a complex New York statutory scheme applicable to convictions for offenses committed prior to September 1, 1967. The New York law prohibited the crediting of good time on presentence confinement in calculating the offender's "minimum parole date," which was the earliest date on which a prisoner *could have been* paroled at the discretion of the parole board. New York, however, did permit good time credit on presentence confinement in calculating the "statutory release date," which was the earliest date the offender *must have been* paroled by the parole board. In addition, the statutory scheme at issue in *McGinnis* was replaced by a new statutory procedure which abolished good time on the minimum sentence and authorized a prisoner to meet the parole board at the expiration of the minimum term. This replacement statute applied to offenses committed subsequent to

1. Although the United States Supreme Court has never held that indigency, *per se,* is a suspect classification, it strongly implied in *San Antonio School District v. Rodriguez,* 411 U.S. 1, 20–22, 93 S.Ct. 1278, 1289–91, 36 L.Ed.2d 16, 35–36 (1973), that a wealth classification may be constitutionally suspect when it absolutely deprives those who are impecunious of any meaningful opportunity to enjoy a benefit available to others. Moreover, in the context of governmental treatment of individuals in the criminal justice system, the Supreme Court has closely scrutinized classifications which disadvantage the impecunious. *E.g., Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971) (state may not convert a "fines only" penalty scheme into a jail sentence simply because a convicted defendant is too poor to pay the fine); *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970) (defendant unable to pay fine could not be incarcerated beyond maximum term of imprisonment fixed by statute; equal protection requires that "statutory ceiling placed on imprisonment ... be the same for all defendants irrespective of their economic status"); *Roberts v. LaVallee,* 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967) (indigent defendant entitled to free transcript of preliminary hearing for use at trial); *Rinaldi v. Yeager,* 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966) (statutory scheme requiring only indigent defendants sentenced to prison to reimburse the state for the cost of a transcript on appeal constituted an "invidious discrimination" between those convicted defendants and

others sentenced only to pay fine or subject only to suspended sentence or probation); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (state may not require an indigent to make a preliminary showing of merit as a condition for appointment of appellate counsel); *Burns v. Ohio,* 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959) (state cannot require indigent defendant to pay filing fee before permitting appeal); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (state cannot deprive indigent defendant convicted of felony of free trial transcript for purposes of appeal). These cases seem to indicate that in the context of criminal justice a statutory scheme which absolutely denies a statutory benefit to a distinct class of defendants solely on the basis of their financial inability to post bail would constitute a suspect classification triggering a strict scrutiny standard of review.

Although there may be a few persons in the affected class who are incarcerated prior to trial because of a high bail which is beyond the financial ability of most persons to make or because of the pendency of an unbailable charge against them, they are extremely few in number and do not detract from the fundamental character of the class as an economically impoverished one. Most defendants remaining in jail prior to trial are financially unable to post any bail at all.

September 1, 1967, but New York had granted the appellee-prisoners, Royster and Rutherford, the opportunity to elect the new statutory procedure for parole eligibility. Although Royster and Rutherford declined the state's offer, the availability of the new statutory procedure on parole eligibility caused the court to view them in "at least as favorable a position as all state prisoners convicted for offenses committed subsequent to September 1, 1967, including those released on bail prior to sentence." *Id.* at 269, 93 S.Ct. at 1059, 35 L.Ed.2d at 288. Thus, their disadvantage in the computation of time was "only in comparison with those who were convicted of offenses committed prior to September 1, 1967, and made bail prior to trial," *id.,* and not to those sentenced for offenses committed after September 1, 1967.

In a real sense the New York statutory scheme in *McGinnis* did grant some credit for good time on presentence confinement. Admittedly, this credit was partial, in that it was calculated only on the mandatory parole date, as distinct from the discretionary parole date.[2] However, this end-means relationship between parole and good time credit in the New York statute is manifestly different from Colorado's statutory scheme, which results in a total denial of all good time credit on all presentence confinement. Also, in contrast to *McGinnis,* Colorado has no statutory alternative for computing a release date that might place these defendants on a relatively equal footing, in terms of actual time served, with other offenders who are financially able to make bail. Viewed against the backdrop of the New York statutory scheme, I do not read *McGinnis* as adopting a *per se* rule that should control the issue raised here. On the contrary, any reasonably probing look at the asserted legislative goals of the Colorado good time statute and the actual methodology employed to effectuate those goals

dispels the notion that a reasonable nexus exists between end and means.

## II.

The Department of Corrections (department) credits statutory good time solely on the basis of the unexpired term of the sentence, which is computed by deducting presentence confinement from the actual sentence. The department makes this good time allocation as soon as it receives notice of the sentence, independently of any consideration of rehabilitation or discipline. The department refuses to credit presentence confinement with statutory good time solely because of the *presentence* character of the confinement and not because of any rehabilitative recalcitrance or institutional maladjustment on the part of the offender. This obvious differential in treatment represents, in my view, a clear case of invidious discrimination which fails to satisfy even the minimum rationality standard of equal protection doctrine.

I am at a loss to understand how the asserted rehabilitative and disciplinary interests of the state are served by *automatically* crediting sentenced offenders with statutory good time. Nor can I find any logic in a statutory scheme that purports to enhance rehabilitation and institutional discipline by a good time entitlement program, but categorically denies good time credit solely on the basis of the *presentence* character of the confinement, without regard to the presentence detainee's institutional behavior during the period of presentence confinement. Nor does it make any sense to require that presentence confinement be credited against the term of any sentence, section 16–11–306, C.R.S. 1973 (1982 Supp.), but to disallow good time credit on the same presentence confinement. If presentence confinement must be taken into consideration in computing the term of a sentence, then it also should be taken into

**2.** "Thus, New York's decision to deny goodtime credit for presentence jail time solely with respect to a state prisoner's *minimum* parole date is rationally justified on the ground that the risk of prematurely releasing unrehabilitated or dangerous criminals may

well be greatest when the parole decision is made prior to the expiration of the minimum sentence." *McGinnis v. Royster, supra* at 274, 93 S.Ct. at 1061–62, 35 L.Ed.2d at 291 (Emphasis added).

consideration for purposes of statutory good time, which is directly related to the length of a sentence. *E.g., White v. Gilligan,* 351 F.Supp. 1012 (S.D.Ohio 1972); *Parker v. Bounds,* 329 F.Supp. 1400 (E.D.N.C.1971). The long and short of the matter is that in Colorado an offender's financial inability to post bail results in presentence confinement, which in turn leads to a categorical denial of good time credits, thereby resulting in a longer period of incarceration for the indigent unable to post bail than for offenders sentenced to the same period of time for the same offense but who, unlike the indigent defendant, are able to post pretrial bail. This is a wealth discrimination which bears no rational connection to any legitimate governmental interest. *E.g., People v. Deegan,* 56 Misc.2d 567, 289 N.Y. S.2d 285 (1968).

### III.

The majority's unwillingness to accept the defendant's equal protection argument stems, in part, from its reluctance to conclude that "presentence confinement is punishment." Presentence confinement, however, is nothing short of *de facto* punishment. The legislature recognized the punitive character of this confinement when, in 1979, it created a statutory entitlement to presentence confinement credit. Section 16–11–306, C.R.S.1973 (1982 Supp.). Furthermore, this court itself in a companion case decided this day, *People v. Chavez,* 659 P.2d 1381 (Colo.1983), construes section 17–22.5–101, C.R.S.1973 (1982 Supp.), as requiring statutory good time credit on presentence confinement precisely because, in this court's words, "presentence confinement in a jail facility becomes in effect a part of the time served on the convicted person's sentence." "Time served" is the form of punishment authorized by law for convicted offenders.

I also disagree with the majority's conclusion that crediting these defendants with statutory good time would somehow implicate the constitutionality of the bail system. The bail system would no more be affected by granting these defendants their requested relief than it would be by according sentenced offenders a statutory right to presentence confinement, as the legislature has already done, section 16–11–306, C.R.S. 1973 (1982 Supp.), or by granting them the statutory right to good time credit against presentence confinement, as this court has done in the companion case of *People v. Chavez, supra,* for offenders sentenced for crimes committed after July 1, 1979.

I recognize that this court for a number of years has rejected equal protection claims to credit for presentence confinement. *See, e.g., Godbold v. District Court,* 623 P.2d 862 (1981); *Perea v. District Court,* 199 Colo. 27, 604 P.2d 25 (1979); *People v. Martinez,* 192 Colo. 388, 559 P.2d 228 (1977); *People v. Jones,* 176 Colo. 61, 489 P.2d 596 (1971). Our prior decisions, at least in my view, are predicated upon "a rule of law that is no longer constitutionally viable," *Godbold v. District Court, supra* at 866 (Quinn, J., dissenting); *see also Godbold v. Wilson,* 518 F.Supp. 1265 (D.Colo.1981). *Stare decisis* should not acquire an unyielding rigidity, incapable of response to significant disparities in treatment solely on the basis of wealth or indigency. Just as "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has," *Griffin v. Illinois,* 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891, 899 (1956), so too there can be no equal treatment under the law when an indigent is forced to serve a longer term of incarceration than the nonindigent solely because of his poverty. I would accordingly reverse the judgment and remand the case for the entry of appropriate orders granting statutory good time to the defendants based upon their respective terms of presentence confinement.

NEIGHBORS, Justice, concurring in part and dissenting in part.

I concur in the opinion of the court that a trial court has jurisdiction pursuant to Crim.P. 35(c)(2) to decide whether a defendant's constitutional rights were violated by the manner in which the Department of

Corrections (Department) computes good-time credits. However, I respectfully dissent to the court's decision that the Department has not violated the defendants' constitutional rights.

The parties have stipulated that the defendants were indigent and that their indigency prevented them from posting bond. Accordingly, the sole reason that the defendants were . unable to post bond was because of their poverty.

The Department projects a prisoner's release date in the following manner: The Department presumes that every inmate will earn the good-time credits authorized by statute.[1] Good-time credits are computed from the day the inmate is sentenced by the trial court, even though the prisoner may be incarcerated in a county jail awaiting transfer to the Diagnostic Center at Canon City. The Department first subtracts the amount of pre-sentence confinement stated in the mittimus from the sentence. The sentence is then reduced by 50 percent based upon the statutory requirement of day-for-day good-time.[2]

The Department's method of computing the good-time credits results in a different length of confinement for the same sentence where the only distinction is whether a defendant was able to make bond. The striking example noted in footnote 3 of the court's opinion is overwhelming evidence of the basic unfairness of the Department's policy. One defendant who is sentenced to four years at the Department of Corrections after having been free on bond pending conviction will serve twenty-four

months, less any earned time. An indigent defendant who was unable to post bond, served six months of pre-sentence confinement in a county jail and receives a sentence of four years will serve twenty-seven months, less any earned time.

Two classes of inmates are created by the Department's policy. The first class are those inmates who post bond and then serve their entire sentence while in the custody of the Department. The second class is composed of inmates who are unable to post bond solely because of indigency and serve their sentence both at a county jail and in the custody of the Department. The first class serves less net time in confinement because each defendant receives a good-time credit against his entire sentence, while the second class of inmates receives no such credit for pre-sentence confinement. The issue presented in these cases is whether the defendants have been denied equal protection by the Department's policy of denying good-time credits for pre-sentence confinement.

In *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973), the United States Supreme Court rejected an equal protection challenge to a denial of good-time credits under the federal constitution. The court today relies on *McGinnis* to reach a similar result in these cases. *McGinnis* is not persuasive authority based on four reasons.

First, Colorado inmates are presumed eligible for good-time credits. Good-time credits are awarded to the inmate beginning at the moment of sentencing. Good-

---

1. Today the court has announced two decisions governing an inmate's right to good-time credits for pre-sentence confinement. In *People v. Chavez,* 659 P.2d 1381 (Colo.1983), the defendant is granted the requested good-time credits based on the fact that the crime was committed after July 1, 1979. In this case, the defendants were convicted of crimes committed prior to July 1, 1979. However, they were sentenced after July 1, 1979. In 1979, the legislature enacted a new statute governing good-time credits for persons sentenced for crimes committed on or after July 1, 1979. Because of the apparent conflict in the two statutes, section 17–20–107, C.R.S.1973 (1980 Supp. to 1978 Repl.Vol. 8), and

section 17–22.5–101, C.R.S.1973 (1980 Supp. to 1978 Repl.Vol. 8), the record in *Chavez* indicates that the attorney general has advised the Department that it must grant good-time credits beginning with the date of sentencing because the statute, section 17–22.5–101, C.R.S. 1973 (1980 Supp. to 1978 Repl.Vol. 8), does not limit such credits to inmates who are incarcerated in the State Penitentiary at Canon City. The defendant Cory testified that this procedure was followed in his case, as shown in footnote 3 of the court's opinion.

2. Section 17–22.5–101, C.R.S.1973 (1980 Supp. to 1978 Repl.Vol. 8).

time credits are awarded prior to any exemplary conduct by an inmate and are, therefore, unrelated to rehabilitation efforts. Good-time credits are withdrawn from an inmate only in the event there is a violation of the rules and regulations of the institution where he or she is confined. Good-time credits are not awarded for positive behavior but are withdrawn for negative conduct. Earned time, on the other hand, is closely related to rehabilitation and is awarded to the inmate upon his or her compliance with the statutory requirements.[3] In addition, forty-five days in good-time credits vest each ninety days.

Second, the New York statute under attack in *McGinnis* explicitly prohibited consideration of good-time credits for county jail time in calculating the minimum parole date. Our statutes contain no such prohibition. Rather, section 16–11–306, C.R.S.1973 (1978 Repl.Vol. 8), specifically requires that an inmate be given credit for *all* pre-sentence confinement.

Third, the Court in *McGinnis* noted that an amended statute had been passed which created a new procedure governing appearances before the parole board.[4] The complaining inmates failed to follow the new procedure which lessened the disadvantage which was the basis of the equal protection claim.

Fourth, my research discloses that, except for one jurisdiction,[5] all state courts which have considered the issue based upon similar facts have concluded that the denial of pre-sentence or conduct good-time credits to indigent prisoners results in a denial of equal protection under either a rational basis or compelling state interest test. *People v. Sage,* 26 Cal.3d 498, 611 P.2d 874, 165 Cal.Rptr. 280 (1980);[6] *Hampton v. Rowe,* 88 Ill.App.3d 352, 43 Ill.Dec. 511, 410 N.E.2d 511 (1980);[7] *State ex rel. James v. Stamps,* 562 S.W.2d 354 (Mo.1978).[8]

The court has adopted a rational basis test to analyze the defendant's constitutional claims. The court upholds the Department's policy on the ground that rehabilitation and discipline provide a satisfactory rational basis. I disagree. There is nothing in the record or the statutes which supports this conclusion. The claim that good-time credits are somehow related to rehabilitative programs that only the Department can provide "is the red herring in this litigation." *McGinnis v. Royster,* 410 U.S. at 279, 93 S.Ct. at 1064 (Douglas, J., dissenting). The manner in which the Department administers the statutory sentencing scheme establishes beyond argument that the sole purpose of good-time credits is to induce good behavior, regardless of where the prisoner is confined.

Wealth discrimination has been treated as a suspect classification in the context of trial, appellate, and sentencing proceedings in criminal cases. *See, e.g., Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585,

---

**3.** Section 17–22.5–102, C.R.S.1973 (1980 Supp. to 1978 Repl.Vol. 8).

**4.** *N.Y. Penal Law* § 70.30 (McKinney 1975), Practice Commentaries state at page 253–54: "It should also be noted that good time is now computed on the term of the sentence and not—as was formerly the case—on the term of the sentence less jail time."

**5.** *McCormick v. Hunt,* 328 So.2d 140 (La.1976).

**6.** The California Supreme Court stated: "In conclusion, the People have not suggested, nor has our independent research revealed, a rational basis for, much less a compelling state interest in, denying presentence conduct credit to detainee/felons." 26 *Cal.*3d at 508, 165 *Cal.Rptr.* at 285, 611 P.2d at 879.

**7.** The Illinois court stated: "The succinct issue before us is whether the classification bears a rational relationship to a legitimate legislative purpose. We believe that it does not." 88 Ill.App.3d at 355, 43 Ill.Dec. 511 at 513, 410 N.E.2d 511 at 513.

**8.** The Missouri Supreme Court stated: "The succinct issue before us is whether that rational basis for distinguishing between a 'day' served in jail prior to sentence to a state institution and a 'day' served in jail prior to sentence to the St. Louis Medium Security Institution by reason of the same crime. No compelling state reason to hold otherwise has been suggested." 562 S.W.2d 354 at 356.

100 L.Ed. 891 (1956); *Godbold v. Wilson,* 518 F.Supp. 1265 (D.Colo.1981). When a suspect classification is established or a fundamental constitutional right is involved, the strict judicial scrutiny standard must be applied. To uphold the classification under that standard, there must be a necessary relationship between the classification and a compelling governmental interest. *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

In *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), the Supreme Court held that a convicted criminal could not be imprisoned for a period of time exceeding the statutory maximum as a substitute for payment of a fine when the non-payment was involuntary due to indigency. The Court stated:

> "However, once the State has defined the outer limits of incarceration necessary to satisfy its penalogical interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency."

399 U.S. at 241–42, 90 S.Ct. at 2022. The "statutory ceiling placed on imprisonment for any substantive offense [must] be the same for all defendants irrespective of their economic status." *Williams v. Illinois,* 399 U.S. at 244, 90 S.Ct. at 2023–2024. In *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), the Court extended *Williams* to bar imprisonment of an indigent defendant who was unable to pay the fine for an offense that was punishable only by fine. The facts in the cases here differ from those in *Williams* and *Tate* because the defendants are not to be confined longer than the statutory maximum. However, the consequences to the defendants are the same because "the indigent is forced to serve a longer term in prison than the non-indigent solely because of his poverty." *See Godbold v. District Court,* 623 P.2d at 866 (Colo.1981) (Quinn, J., dissenting).

The United States Supreme Court announced the test for determining when a wealth based classification impermissibly discriminates against a suspect class in *San Antonio Independent School Dist. v. Rodriguez, supra.* The Court stated:

> "The individuals, or groups of individuals, who constituted the class discriminated against in our prior cases shared two distinguishing characteristics: because of their impecunity they were completely unable to pay for some desired benefit, and as a consequence, they sustained an absolute deprivation of a meaningful opportunity to enjoy the benefit."

411 U.S. at 20, 93 S.Ct. at 1290. In applying the test to the facts of this case, I am persuaded that a defendant who remains confined in a jail before trial solely because of his indigency is a member of a class who is "completely unable to pay for some desired benefits," *i.e.,* being free on bail pending trial. The defendant has sustained an absolute deprivation of a meaningful opportunity to enjoy that benefit.

The defendants will be confined for a longer period of time simply because of their indigency. Such a result violates the defendants' guarantees of equal protection under the Fourteenth Amendment to the United States Constitution and article II, section 25 of the Colorado Constitution. The legislature has enacted a statutory scheme governing credit for pre-sentence confinement, good-time, and earned time. Section 16–11–306, C.R.S.1973 (1978 Repl. Vol. 8), requires credit for all pre-sentence confinement. The statute must be construed in favor of the defendants to include good-time credits. If a statute is capable of two constructions, that construction should be adopted which would entitle the prisoner to his or her release at the earliest date. *In re Blocker,* 69 Colo. 259, 193 P. 546 (1920); *State ex rel. James v. Stamps, supra* ("Precedent abounds, however, for a liberal construction of 'good time' statutes." 562 S.W.2d at 355 n. 1).

Equal protection principles require that persons sentenced to the Department of Corrections in Colorado be treated equally, regardless of financial condition. *See Godbold v. Wilson,* 518 F.Supp. 1265 (D.Colo.

1981). There is a suspect classification based on wealth discrimination. Good-time credits are disallowed only to inmates who are unable to post bail. This discrimination is clearly invidious. Therefore, strict judicial scrutiny must be applied under an equal protection analysis. There must be a "necessary relationship" between the classification and a "compelling governmental interest" to uphold the governmental objective. *San Antonio Independent School Dist. v. Rodriguez, supra.* The record fails to establish any compelling governmental interest in requiring indigent prisoners to serve longer sentences than those who are financially able to make bond prior to trial.

Accordingly, I would remand these cases to the district court with directions to determine the appropriate good-time credit based on the amount of pre-sentence confinement. If a defendant is entitled to good-time credits, the trial court can simply amend the mittimus in each case by doubling the amount of pre-sentence confinement time presently reflected in each mittimus. In future cases, the probation department, as part of its pre-sentence investigation, can make a recommendation to the sentencing court as to whether a defendant should be granted good-time credits on his or her pre-sentence confinement.

