468 So.2d 1329 (1985)
Paul VINCENT
v.
STATE of Louisiana Through the DEPARTMENT OF CORRECTIONS, C. Paul Phelps, et al.
No. CA 84 0335.
Court of Appeal of Louisiana, First Circuit.
April 16, 1985.
Writ Denied June 17, 1985.
*1330 David Kent Savoie, Sulphur, for plaintiff-appellee Paul Vincent.
J. Marvin Montgomery, Baton Rouge, for defendant-appellant State of La., Through Dept. of Corrections, et al.
Before COLE, CARTER and LANIER, JJ.
COLE, Judge.
The question presented is whether a former inmate is entitled to monetary damages as a consequence of ministerial action by prison officials which resulted in the forfeiture of 455 days of "good time" accrued by him.
On June 25, 1974, the plaintiff, Mr. Paul Vincent, was sentenced to a five year term for possession with intent to distribute phencyclidine. On January 1, 1976, Mr. Vincent was granted a parole. Subsequently, he was arrested for possession with intent to distribute cocaine. A parole violation warrant was issued while Mr. Vincent was in custody at the Plaquemine Parish prison, awaiting trial. Mr. Vincent escaped, but was apprehended eleven days later.
On May 10, 1977, Mr. Vincent was sentenced to a one year term for possession of cocaine, to be served concurrently with the remaining balance of his prior five year sentence; and was further sentenced to an additional one year term for simple escape to be served consecutively to the other impositions. On October 7, 1977, Mr. Vincent's parole was officially revoked. Because of his escape, he was found by prison officials to have automatically forfeited the 455 days of good time he had accrued.
In December of 1978, Mr. Vincent filed for habeas corpus relief asserting he should have been released on September 15, 1978. He contended the forfeiture of all but 180 days of his good time by the prison officials was improper because it was not statutorily authorized. On March 29, 1979, the Twentieth Judicial District Court held the forfeiture and ensuing confinement to be based on a correct interpretation of the law. Mr. Vincent was discharged from custody on June 16, 1979. On October 8, 1979, the Louisiana Supreme Court dismissed as moot Mr. Vincent's appeal from his denial of habeas corpus relief.
Subsequent to this dismissal, the Supreme Court rendered State Ex Rel. Peck v. Phelps, 385 So.2d 212 (La.1980). Basically, Peck held escape from a parish jail while awaiting trial for a subsequent offense did not authorize forfeiture of all good time credits earned from the Department of Corrections before parole and the prisoner is entitled to have those credits reinstated, with the exception of 180 days forfeited for revocation of parole. Mr. Vincent claims since he can not obtain a credit for his forfeited good time, because of his discharge, he is entitled to monetary damages for wrongful detention.
A bifurcated trial was conducted by a Commissioner of the Nineteenth Judicial District Court on the issues of liability and quantum. The Commissioner recommended liability be found against the defendants. The court subsequently rendered judgment holding the defendants liable for the detention of Mr. Vincent. Thereafter, a quantum recommendation by the Commissioner of $15,000 was adopted by the district court and judgment in that amount, plus legal interest, was rendered against defendants. Defendants appeal from this latter judgment and plaintiff has answered the appeal seeking an increase in the quantum award from $15,000 to $80,000.[1]

*1331 I.
The Commissioner's reasons (adopted by the court) discloses liability was based upon a finding that the elements of the traditional tort of false imprisonment had been established. The good faith of the defendants was held not to act as a bar to their liability, it being determined neither ill will nor malice is an element of false imprisonment. Therefore, the report concluded, whether good faith was present or not liability would ensue from the defendants' action which resulted in Mr. Vincent being incarcerated for a period of time beyond his correct release date. We find this conclusion to be a misapplication of the law.
Louisiana jurisprudence has long recognized a good faith defense to the award of damages when an official is acting in the course of his duty, under color of legal authority, and in furtherance of a legitimate state interest. O'Conner v. Hammond Police Dept., 439 So.2d 558 (La.App. 1st Cir.1983); Richard v. State through Dept. of Public Safety, 436 So.2d 1265 (La.App. 1st Cir.1983), writ denied, 441 So.2d 1223 (La.1983); Dunson v. Baker, 144 La. 167, 80 So. 238 (1918). In State Ex Rel. Jones v. Walls, 356 So.2d 75, 76 (La. App. 1st Cir.1977), the First Circuit held,
"[W]hen prison officials act in reliance on good faith beliefs that what they are doing is constitutionally and lawfully permissible, they are not liable in damages as a consequence of their actions even if it should be later established that their beliefs were not well founded."
Based upon this view, the court in State Ex Rel. Jones specifically found the defendant prison officials could not be held civilly liable in damages to a plaintiff inmate for sentencing him to five days' solitary confinement and a loss of 12 days' good time on finding him guilty of violating a disciplinary rule.
As authority for this basis of decision the State Ex Rel. Jones court cited Skinner v. Spellman, 480 F.2d 539 (4th Cir.1973). Skinner examined an action brought pursuant to U.S.C. 42 § 1983, which permits government officials to raise a qualified immunity defense. We find this to be an adoption by the First Circuit of the qualified immunity defense in circumstances such as those exhibited in State Ex Rel. Jones, i.e., where civil damages are sought from prison officials stemming from the administration of the prison.
A plaintiff bringing forth a "1983 action" seeking damages for deprivation of statutory rights may overcome a defendant official's qualified immunity only by showing those rights were clearly established at the time of the conduct at issue. Davis v. Scherer, ___ U.S. ___, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). The court recites the policy necessitating such a standard,
"... [i]t would become more difficult, not only for officials to anticipate the possible legal consequences of their conduct, but also for trial courts to decide even frivolous suits without protracted litigation.
Nor is it always fair, or sound policy, to demand official compliance with statute and regulation on pain of money damages. Such officials as police officers or prison wardens, to say nothing of higher-level executive levels who enjoy only qualified immunity, routinely make close decisions in the exercise of the broad authority that necessarily is delegated to them. These officials are subject to a plethora of rules, `often so voluminous, ambiguous, and contradictory, and in such flux that officials can comply with them only selectively.'"

Davis at 3021.
Cf. Procunier v. Navarette, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), for the treatment afforded qualified immunity in a § 1983 action brought against prison officials.

II.
Therefore, this court must now determine whether the action of the prison officials in this instance was reasonable or whether it was conduct which deprived Mr. Vincent of a clearly established right. A finding of arbitrary or capricious action on the part of the prison officials would require *1332 a finding of liability. State Ex Rel. Jones, supra at 76.
Without question Mr. Vincent was subject to forfeiture of 180 days of accrued good time due to the revocation of his parole. La.R.S. 15:571.4(B), as amended by Acts 1974, No. 200.[2] However, the applicable law was interpreted to require a forfeiture of all 455 days of Mr. Vincent's accrued good time because of his escape from the Plaquemine Parish prison.
La.R.S. 15:571.8, as it appeared prior to amendment and reenactment by Acts 1979, No. 490 § 1 and the repeal of "Sections 571.7 and 571.8 of Title 15 of the Louisiana Revised Statutes of 1950" by § 2 of the same Act, provided:
"If any prisoner who has received commutation of sentence or earned diminution of sentence under the provisions of R.S. 15:571.3 through 15:571.7 escapes, the prisoner shall thereby automatically forfeit all claims to commutation of sentence previously granted or diminution of sentence previously earned. The prisoner may thereafter be granted another commutation of sentence and may earn a diminution of sentence only on that portion of his original sentence remaining at the time of his escape. In determining the amount of good time which may be earned in each year following his return to the prison from which he escaped, the date of his return to the prison shall be taken as the first day of the first twelve months period during which diminution of sentence may be thereafter earned. Other than time thereafter served and good time thereafter earned, the time actually served prior to his escape shall be the only time allowed in determining the expiration date of his original sentence or that time to which the original sentence may have been commuted subsequent to his return to prison."
By the terms of this provision, originally enacted in 1942, all of Mr. Vincent's accrued good time was forfeited administratively by the prison officials.
Mr. Vincent contends this was not a reasonable action. He argues La.R.S. 15:571.8, as it appears above, must be read in pari materia with La.R.S. 15:571.4, as it appeared in Acts 1974, No. 200, and that the latter prohibited any other method of good time forfeiture. It provided, in pertinent part:
"Good time which has been earned will not be forfeited except that an inmate who escapes from custody will forfeit all good time earned on that portion of the sentence served prior to escape. An offender who is returned to an institution due to revocation of parole will forfeit all good time earned on that portion of the sentence served prior to parole up to a maximum of one hundred and eighty days." (Underscoring ours.)
Prior to the time of Mr. Vincent's escape the court in McCormick v. Hunt, 328 So.2d 140 (La.1976), pronounced an individual in parish prison after arrest and while awaiting trial is not an inmate in the custody of the Department of Corrections. Accordingly, Mr. Vincent argues the prison officials were charged with the knowledge his escape from the Plaquemine Parish prison was not an escape from the custody of the Department of Corrections and any forfeiture of his good time beyond 180 days was clearly wrong.
We do not agree. McCormick did not involve a prisoner "on parole" who escaped from a parish prison. La.R.S. 15:574.7(A) states, "Each parolee shall remain in the legal custody of the institution from which he was paroled...." Mr. Vincent was a prisoner on parole and therefore it was a reasonable interpretation of the law by the prison officials to consider him in the custody of the Department of Corrections and to require a forfeiture of all 455 days of his good time because of his escape.[3] Not *1333 until Peck interjected questionable policy considerations into this complex statutory scheme did the proper method of calculation become clearly established. At the time of the forfeiture the action of the prison officials must be deemed reasonable. Their conduct did not deprive plaintiff of a clearly established right.[4]
Having determined the prison officials acted reasonably in applying the law, we find no liability on the part of the defendants. The Peck holding is limited to situations where a credit of time may be given. For these reasons, the trial court is reversed on both the issue of liability and the award of damages. Plaintiff is cast for all costs of court.
REVERSED.
CARTER and LANIER, JJ., concurring. LANIER, J.
We agree with the opinion and assign additional reasons.
The tort of false imprisonment has two essential elements: (1) detention of a person; and (2) the unlawfulness of such detention. Unlawful detention for purposes of false imprisonment is restraint without color of legal authority. Kyle v. City of New Orleans, 353 So.2d 969 (La. 1977); O'Conner v. Hammond Police Department, 439 So.2d 558 (La.App. 1st Cir. 1983).
In the instant case, Vincent was lawfully confined initially pursuant to valid sentences. Subsequently, the question was raised about the amount of "good time" to which he was entitled. Vincent brought this matter to court for an adjudication. However, the district court ruled the interpretation given by the prison officials to the law was correct. In this factual posture, the district court judgment provided additional color of legal authority for the restraint of Vincent. That judgment provided the additional color of legal authority until State ex rel. Peck v. Phelps, 385 So.2d 212 (La.1980) was decided at a point in time after Vincent's release from custody. The prison officials under the facts of this case could justifiably rely on the district court ruling. Teasley v. Nelson, 39 Ga.App. 773, 148 S.E. 534 (1929); 35 C.J.S. False Imprisonment § 34, pp. 680-681.
CARTER and LANIER, JJ., concur.
NOTES
[1] The judgment appealed states "... defendants are liable and should pay unto plaintiff the sum of Fifteen Thousand and No/100 ($15,000.00) Dollars, together with legal interest thereon from date of judicial demand until paid." The defendants are not specified in the judgment and were never particularized by the plaintiff, being found only in the caption of his petition. Construing together all the pleadings in the record, it is clear there are only two defendants: (1) The State of Louisiana, through the Department of Corrections; and (2), C. Paul Phelps.
[2] Under State v. Curtis, 363 So.2d 1375 (La. 1978), the forfeiture provisions in effect at the time of the forfeiting conduct govern the computation of Mr. Vincent's good time and not the provisions in effect at the time the parole was actually revoked.
[3] The Attorney General's office also considered parolees to be in the custody of the Department of Corrections. Reports and Opinions of the Attorney General of Louisiana No. 75-131.
[4] Because of our application of the qualified immunity doctrine in this instance, it is unnecessary to address the issue raised as regards plaintiff's proper release date which, in turn, determines the length of his alleged improper detention.