**Ronald ROODING, individually, and on behalf of all other persons similarly situated, Plaintiff,**

**v.**

**Howard PETERS, III, Director, Illinois Department of Corrections, in his individual capacity, and the Illinois Department of Corrections, Defendants.**

**No. 94 CV 1070.**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 17, 1994.

Mark K. Schoenfield, Schoenberg, Fisher, & Newman, Ltd., Chicago, IL, Ira T. Kaufman, Buffalo Grove, IL, for plaintiff.

Andrew Neal Levine, Iain D. Johnston, Illinois Atty. Gen. Office, Chicago, IL, for defendants.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Ronald Rooding brings this action pursuant to 42 U.S.C. § 1983, against Howard Peters, III, Director of the Illinois Department of Corrections (IDOC).[1] He alleges that Peters' policy requiring inmates to serve at least 60 days in an IDOC facility violated his rights under the United States Constitution and Illinois law, and continues to violate the rights of others now imprisoned. He asks the court to certify a class of complainants which he claims to represent, and for which he seeks monetary and injunctive relief. Peters now moves to dismiss, and for the reasons stated below, his motion is denied.

### FACTS

On November 17, 1993, Ronald Rooding was convicted of criminal damage to property and sentenced to one year in jail (Cplt. ¶ 12). He claims that under Illinois law his one-year sentence would have been reduced 183 days for good conduct credits awarded for each day served in prison, and 90 days for good conduct credits awarded for meritorious service (Cplt. ¶¶ 14–5). Therefore, he alleges, his actual incarceration should have totalled 92 days. *Id.*

Rooding was incarcerated in non-IDOC facilities for 3 days when he was arrested and placed in custody, for 66 days when he was awaiting trial at the Cook County Department of Corrections (CCDC), and for 2 days at CCDC after sentencing (Cplt. ¶ 13). Adding these up, he claims he served 71 days in non-IDOC facilities out of the 92 days he was to be incarcerated, and that any further incarceration should have totalled 21 days (Cplt. ¶ 18). He estimates that his release date should have been December 10, 1993. *Id.* However, when Rooding was transferred to an IDOC facility his release date was set at January 19, 1994—60 days from his transfer, rather than the 21 days he says remained of his sentence (Cplt. ¶ 19). His release date was consistent with a policy requiring inmates to serve at least 60 days of their sentences at an IDOC facility (Cplt. ¶ 20).

On December 17, 1993, a week after Rooding claims he should have been released, he filed a petition against Peters in the Circuit Court of Cook County seeking habeas corpus relief or a writ of mandamus. Rooding argued that his continued incarceration violated his due process and equal protection rights under the United States Constitution because, as a result of the time he served in non-IDOC facilities, his incarceration exceeded the time served by a person with the same sentence who was incarcerated exclusively in an IDOC facility (Cplt. ¶¶ 20–1). On December 22, 1993, the circuit court issued a writ of mandamus directing Rooding's release (Cplt. ¶ 22). On December 29, 1993, the court denied a motion for reconsideration, again ordered Rooding's release, and denied a request to stay its decision pending appeal. *Id.* Rooding, however, was not released until January 6, 1994, the day after an appellate court denied an emergency motion for a stay of the circuit court's decision (Cplt. ¶ 22). Rooding therefore claims he was released 27 days late (Cplt. ¶ 23). He alleges that his due process and equal protection rights under the Constitution were violated, that he was falsely imprisoned, and that others suffered and still suffer the same injuries.

### DISCUSSION

Rooding's suit to recover damages for unconstitutional imprisonment implicates issues recently addressed in *Heck v. Humphrey,* —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The Court held that when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action

1. On March 24, 1994, Rooding voluntarily dismissed IDOC as a defendant in this action.

should be allowed to proceed, in the absence of some other bar to the suit. *Id.* at ——, 114 S.Ct. at 2372. Rooding's action, if successful, will neither demonstrate nor necessarily imply the invalidity of his conviction or sentence. He does not challenge his conviction for criminal damage to property or his one year sentence. Rather, he challenges the manner in which Peters administered his sentence. Moreover, and perhaps most importantly, he is no longer a prisoner, and "individuals not 'in custody' cannot invoke federal habeas jurisdiction, the only statutory mechanism besides § 1983 by which individuals may sue state officials in federal court for violating federal rights. That would be an untoward result." *Heck,* —— U.S. at ——, 114 S.Ct. at 2379 (Souter, J., concurring). *Heck* does not preclude Rooding from bringing this action.

### a. Alleged Constitutional Violations

Rooding contends the 60-day rule violated his equal protection rights because there is no rational basis related to a legitimate governmental interest for requiring a person who is not incarcerated entirely at an IDOC facility to spend more time incarcerated than someone who is (Cplt. ¶ 24). Peters argues that Rooding's equal protection claim must be dismissed because he does not plead discriminatory intent.

■ Rooding first responds that collateral estoppel precludes dismissal of his equal protection claim because it involves the same issues and parties under § 1983 that it involved in the state court proceedings in which Rooding prevailed. Collateral estoppel prevents the relitigation of an issue if the prior litigation involved the same issue and same party against whom estoppel is being asserted. *Gray v. Lacke,* 885 F.2d 399, 407 (7th Cir.1989); *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n,* 804 F.2d 390, 395 (7th Cir.1986); *In re Nau,* 153 Ill.2d 406, 180 Ill.Dec. 240, 249, 607 N.E.2d 134, 143 (1992). Courts require that in the prior litigation the issue was argued and decided on the merits and necessary to the result. *Id.*

Peters, whom Rooding seeks to estop, was fully represented in the state circuit and appellate court decisions. Peters argues, however, that the issue presented in state court was different than the one here because there Rooding only sought his release, whereas he now seeks monetary and injunctive relief for himself and others.

The strongest support for Peters' argument is the broad language in *Ferrell v. Pierce,* 785 F.2d 1372, 1384–5 (7th Cir.1986), *quoting* Restatement (Second) of Judgments § 27 (1982). The court first observed that a prior determination on the same legal issue "is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id.* However, an exception exists when " 'the significance of the issue for purposes of the subsequent action was not sufficiently foreseeable at the time of the first action.' " *Id.* at 1385, *quoting* Restatement (Second) of Judgments § 27 comment j. Another exception is when " 'the party sought to be precluded, as a result of ... special circumstances, did not have an adequate ... incentive to obtain a full and fair adjudication in the initial action.' " *Id., quoting* Restatement (Second) of Judgments § 28(5)(c).

*Ferrell* is very different from this case. *See Bennett v. Tucker,* 827 F.2d 63, 73 n. 7 (7th Cir.1987) (finding *Ferrell* irrelevant because it "turned on ... specific facts"). In *Ferrell,* a consent decree was interpreted regarding one time period and the plaintiffs then sought to apply that interpretation to a separate three year period. The three year period, however, raised a question of interpretation the first decision did not address. Nor did the first decision suggest a particular conclusion regarding the separate time period. In sum, the defendant had no incentive to adjudicate the issue of another time period in the first action because it could not have anticipated the first decision's impact on that period.

■ Rooding prevailed in state court with his claim that the 60-day rule violates equal protection, and now makes the same claim. Rooding's request for a different remedy does not change the fact that the legal issue here is the same issue that was resolved in Rooding's favor in state court. When he sought his release in state court it was fore-

seeable that if he emerged victorious on the basis that his incarceration was improper he would seek additional relief. The incentive to obtain a full and fair adjudication in the initial action on the issue of equal protection was substantial as to Rooding and other prisoners. Accordingly, Peters moved for reconsideration of the circuit court's decision, and requested a stay from that court and the appellate court.[2] Collateral estoppel is therefore appropriate.

■ Even if collateral estoppel were inapplicable, Rooding sufficiently alleges that Peters intentionally violated his equal protection rights. *See Sims v. Mulcahy,* 902 F.2d 524, 539 (7th Cir.1990) (must establish discriminatory intent for prima facie case of discrimination); *Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1978) (discriminatory purpose implies that action is taken "at least in part 'because of' ... its adverse effects upon an identifiable group").[3] He alleges that Peters established the 60–day rule, and that as a result Peters set a release date later than it would have been if Rooding served his entire sentence in an IDOC facility. These allegations would be consistent with proof that Peters instituted the 60–day rule at least in part to incarcerate someone who serves part of his sentence in non-IDOC facilities longer than someone with the same sentence who serves it only in IDOC facilities. To conclude otherwise would entail hair-splitting that is inappropriate for a motion to dismiss. Therefore, at the very least, Rooding states a claim under 42 U.S.C. § 1983 for violation of his equal protection rights.

Rooding alleges that by incarcerating him more than 92 days, Peters arbitrarily reduced his good conduct credits, depriving him of a liberty interest in violation of his due process rights (Cplt. ¶ 25). Peters argues that because meritorious good conduct credits are not mandated by statute, Rooding did not have a protectible liberty interest in credits sufficient to support his claim for a due process violation.

In *Wolff v. McDonnell,* 418 U.S. 539, 557–8, 94 S.Ct. 2963, 2975–6, 41 L.Ed.2d 935 (1974), the Supreme Court held that state law may create enforceable liberty interests in good-time credits. Over time, the Court established that state law using " 'explicitly mandatory language,' in connection with the establishment of 'specified substantive predicates' to limit discretion, forces a conclusion that the State has created a liberty interest." *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1988), *quoting Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). In *Hewitt,* the prisoner segregation regulations used unmistakably mandatory language "requiring that certain procedures 'shall,' 'will,' or 'must' be employed," and that segregation would not occur absent "specified substantive predicates." 459 U.S. at 471–2, 103 S.Ct. at 871. *See Harris v. McDonald,* 737 F.2d 662, 665 (7th Cir.1984) (mandatory language in prisoner transfer regulation did not create a liberty interest because it did not proscribe transfer absent specific substantive predicates), *citing Hewitt, id.* In *Thompson,* the prison visitor regulations did not establish a liberty interest because they lacked the requisite mandatory language—they stopped short of requiring a particular result upon a finding that the substantive predicates were met. 490 U.S. at 464, 109 S.Ct. at 1910. *Thompson* requires more than *Hewitt* to find a liberty interest; in *Hewitt* it was sufficient that segregation would not occur absent specific predicates, but in *Thompson* the Court required that the specific predicates lead to a particular result.

---

**2.** Peters apparently chose not to pursue the matter further by way of appeal. *See Gray,* 885 F.2d at 406 (full and fair opportunity to litigate "includes the right to appeal an adverse decision").

**3.** There is no indication that the 60–day rule, on its face, discriminates against Rooding. He argues, however, that it is unnecessary for him to show intent. *Wayte v. U.S.,* 470 U.S. 598, 608 n. 10, 105 S.Ct. 1524, 1531 n. 10, 84 L.Ed.2d 547 (1984) (discriminatory intent showing is unnecessary for an "overtly discriminatory classification"). The statement in *Williams v. Lane,* 851 F.2d 867, 881 (7th Cir.1988), that the "intentional disregard of plaintiffs' rights ... was tantamount to intentional discriminatory behavior" is not a statement of law but was the plaintiffs' claim in that case.

Rooding bases his allegation of a due process violation on the Illinois statute which awards different types of good conduct credits, 730 ILCS 5/3–6–3. Peters does not dispute that prisoners have a liberty interest in good conduct credits awarded under 730 ILCS 5/3–6–3(a)(2) because the language is mandatory: "rules and regulations shall provide that the prisoner shall receive one day of good conduct credit for each day of service in prison other than where a sentence of 'natural life' has been imposed." However, Rooding also bases his due process claim on 730 ILCS 5/3–6–3(a)(3), which does not use mandatory language: "rule and regulations shall also provide that the Director may award up to 180 days additional good conduct credit for meritorious service in specific instances as the Director deems proper," except under certain circumstances.

■ The substantive predicates of 730 ILCS 5/3–6–3(a)(3) are proscriptive rather than prescriptive. They would not require the particular result Rooding seeks because they do not under any circumstances require that the director *award* meritorious good conduct credits. Even when the director does, the number of days is discretionary. Therefore, under *Thompson,* the Illinois provision for meritorious service good conduct credits does not on its face create a liberty interest.

This conclusion is supported by *Waletzki v. Keohane,* 13 F.3d 1079, 1080 (7th Cir.1994), in which the court compares 18 U.S.C. § 4161 and § 4162 (since repealed). § 4161 creates a protectible liberty interest in good time credits because it mandates that they be awarded under certain circumstances: "Each prisoner ... whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence." *Hornsby v. Miller,* 725 F.2d 1132, 1135 (7th Cir.1984); *Jackson v. Carlson,* 707 F.2d 943, 947 (7th Cir.1983). However, the language in § 4162 is different. In *Waletzki,* the court held that § 4162 does not create an entitlement for which one can claim a deprivation of liberty because it "places the decision whether to award good-

time credits for job performance 'in the discretion of the Attorney General,' and it provides no criteria for the exercise of that discretion." 13 F.3d at 1081. Similarly, 730 ILCS 5/3–6–3(a)(2) allows the Director to award meritorious good conduct credits when he "deems proper." True, there are guidelines for awarding meritorious good time credits, but as explained above, under *Thompson* these are not sufficient to create a liberty interest.

In *Hamilton v. O'Leary,* 976 F.2d 341, 344 (7th Cir.1992), the Seventh Circuit states that in Illinois the "state-created entitlement to good time credits is a liberty interest protected by the Fourteenth Amendment." The statute cited by the court is 730 ILCS 5/3–6–3 [4]—all of 730 ILCS 5/3–6–3, including the provision for awarding meritorious good conduct credits. Most likely, the court in *Hamilton* did not mean to say as much as it did. If prisoners have a liberty interest in meritorious good conduct credits, the question that immediately arises is, how many? 730 ILCS 5/3–6–3(a)(2) does not mandate a specific number of days, so *Hamilton* would require courts to determine how many credits a prisoner deserves—a task reserved for the Director.

■ There is, however, a reason Rooding sufficiently alleges a liberty interest in meritorious good conduct credits. Rooding alleges that Peters' discretion was replaced with a policy of awarding, absent misconduct, 90 days of meritorious good time credits for each year served. The court in *Durso v. Rowe,* 579 F.2d 1365, 1370–1 (7th Cir.1978), after rejecting the plaintiff's state law argument, held that "plaintiff must be given an opportunity to prove that as a matter of practice, prison officials did not revoke one's work-release status absent a rule violation. If the allegation is established, the plaintiff has denied his right to due process."

The assertion of a liberty interest based upon state policy is questionable after *Hewitt,* where the Court held that a state's creation of a careful procedural structure, without more, does not indicate the existence of a protected liberty interest. 459 U.S. at 460,

**4.** Under its old name, Ill.Rev.Stat. ch. 38, ¶ 1003–6–3.

103 S.Ct. at 864. However, *Durso* provides sufficient support for Rooding's claim of a protected liberty interest to survive a motion to dismiss.

Finally, Peters argues that even if prisoners have a liberty interest in meritorious good conduct credits, it only arises when they are received, and Rooding never received his credits. This raises the question of when the credits that Rooding alleges he was due vested in him, which the court is not prepared to resolve on a motion to dismiss. *See also Urbano v. McCorkle,* 334 F.Supp. 161, 169 (D.N.J.1971) (as an item of damages under § 1983, plaintiff properly alleged he lost an opportunity to earn work-credits). In sum, Rooding sufficiently alleges that the 60-day rule violated his due process rights.

*b. Relief Sought*

■ Rooding's request for declaratory and injunctive relief fails for two reasons. Because he is no longer incarcerated, he does not sufficiently allege a "personal stake" in declaratory or injunctive relief or that the threat of further incarceration is " 'both real and immediate,' not 'conjectural' or 'hypothetical.' " *Los Angeles v. Lyons,* 461 U.S. 95, 102–3, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1982). "Abstract injury is not enough." *Id.* As to those Rooding seeks to include in this action who are still incarcerated, declaratory and injunctive relief are not available in a § 1983 action because "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release." *Heck,* —— U.S. at ——, 114 S.Ct. at 2369, *citing Preiser v. Rodriguez,* 411 U.S. 475, 488–90, 93 S.Ct. 1827, 1835–6, 36 L.Ed.2d 439 (1973).

■ As to Rooding's request for money damages, Peters contends he is protected by qualified immunity. Peters is not immune if Rooding pleads "the violation of a constitutional right that is sufficiently particularized" to put Peters "on notice that his conduct probably is unlawful." *McDonald v. Haskins,* 966 F.2d 292, 294 (7th Cir.1992). Case law guides the determination of whether Peters was on notice that his conduct probably

was unlawful. *Henderson v. DeRobertis,* 940 F.2d 1055, 1058–9 (7th Cir.1991).

In *Hampton v. Rowe,* 88 Ill.App.3d 352, 43 Ill.Dec. 511, 513, 410 N.E.2d 511, 513 (1980), Hampton challenged a discriminatory classification that denied him good time credits "because of his pre-trial detention as opposed to the convicted felon who was free on bail until beginning to serve his sentence of imprisonment in a facility of the Illinois Department of Corrections." The court concluded that the alleged basis for denying Hampton the credits, "that in his presentence detention he was not subject to the jurisdiction of the Department of Corrections," was not rational. *Id.* It supported its conclusion with case law and other Illinois statutory provisions. *Id.* at 513–4, 410 N.E.2d at 513–4.

The court in *Freeman v. Lane,* 129 Ill. App.3d 1061, 85 Ill.Dec. 216, 473 N.E.2d 584 (1985), followed *Hampton.* The court observed that Freeman's factual allegation indicated

> a policy of the DOC where the discretion of the director had been surrendered by him, and supplanted by an established and regular policy of granting meritorious good time to a certain class of inmates of which Freeman alleges his is a member.... If that is the case, and there was an across-the-board award of such credits to inmates in Freeman's class, then Freeman is entitled to an award.

*Id.* at 218, 473 N.E.2d at 586. The court noted that the "justifications and obstacles asserted by the State to an award of meritorious good time by the DOC for time spent in the county jail are the same as those advanced, and rejected, by the court in *Hampton v. Rowe.*" *Id.* at 219, 473 N.E.2d at 587.

■ Although the facts of *Hampton* and *Freeman* are not identical to this action, they are sufficiently particularized to put Peters on notice that discriminating between prisoners based upon where they serve their sentences is probably unlawful. As was the case for Hampton, Rooding served numerous days of pretrial detention before being incarcerated in an IDOC facility. Because *Hampton* found it unacceptable to deny credits on the basis that presentence detention is not subject to IDOC jurisdiction, Peters could have

anticipated that if he discriminated against Rooding on the same basis, as Rooding alleges, his conduct would also be unacceptable. Rooding alleges a policy of granting meritorious good time to a class of inmates that included him. The same allegation was made in *Freeman*, where the court concluded that an across-the-board award of such credits to inmates in Freeman's class would entitle him to the same, regardless of the time he spent in county jail. Therefore, qualified immunity does not protect Peters from Rooding's claim for money damages.

■■■■■ However, Rooding's claim for money damages cannot include prisoners. As mentioned above, a prisoner who challenges the duration of his confinement and seeks release must bring a *habeas corpus* action. *Preiser*, 411 U.S. at 488–90, 93 S.Ct. at 1835–6. While it is true that Rooding seeks money damages, not release, the recovery of damages in this action depends upon a conclusion that the duration of confinement imposed by Peters was improper. That conclusion, if applied to prisoners, would compel their release, which cannot be done in a § 1983 action. Because the court could not award money damages to prisoners without declaring their confinement improper, this action cannot include them. As to those whom Rooding seeks to include that are no longer prisoners, the court defers a decision on whether this action will be certified to include them.

### c. False Imprisonment

■■■■ Rooding alleges that Peters falsely imprisoned him in violation of Illinois law. Peters responds that this is actually a claim against Illinois and it must therefore be brought before the Illinois Court of Claims. "[S]tate rules of immunity are binding in federal court with respect to state causes of action." *Benning v. Bd. of Regents of Regency Universities.*, 928 F.2d 775, 779 (7th Cir.1991). Under Illinois law, the state's Court of Claims has "exclusive jurisdiction over tort suits against the state." *Id. See* 705 ILCS 505/8(d) (1993).

■■■■ In *Benning*, the court observed that "suits against individuals who act within the scope of their employment are deemed to be suits against the state actionable only in the court of claims." 928 F.2d at 779. Peters argues that he acted within the scope of his employment when he established the 60–day rule. However, Illinois cases cited in *Benning* and found elsewhere hold that acts are within the "scope of employment" when there are "no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts," *Robb v. Sutton*, 147 Ill.App.3d 710, 101 Ill.Dec. 85, 90, 498 N.E.2d 267, 272 (1986), such as an allegation of a constitutional law violation. *Healy v. Vaupel*, 133 Ill.2d 295, 140 Ill.Dec. 368, 374, 549 N.E.2d 1240, 1246 (1990). Courts also view suits as suits against the state when "judgment for the plaintiff could operate to control the actions of the State or subject it to liability." *Currie v. Lao*, 148 Ill.2d 151, 170 Ill.Dec. 297, 300, 592 N.E.2d 977, 980 (1992). Still another approach is to "analyze the source of the duty the employee is charged with breaching," because a "State employee who breaches a duty he owes regardless of his State employment is no more entitled to immunity than is a private individual who breaches that same duty." *Id.*

■■■■ In *Benning*, the plaintiff alleged that the defendants negligently performed their official duties in a state university's chemistry department, but not that they violated the law or acted outside their authority. Similarly, in *Healy*, the Court of Claims was held to have exclusive jurisdiction because there was no allegation the defendants acted outside their authority or in violation of the law. 140 Ill.Dec. at 376, 549 N.E.2d at 1248. Rooding, however, alleges that Peters violated the Constitution. In *Herget Nat'l Bk. of Pekin v. Kenney*, 105 Ill.2d 405, 86 Ill.Dec. 484, 486–7, 475 N.E.2d 863, 865–6 (1985), jurisdiction was found non-exclusive because the defendant state official violated the Constitution and therefore the plaintiff's suit was not against the state. Jurisdiction was not found exclusive in *Senn Park Nursing Ctr. v. Miller*, 104 Ill.2d 169, 83 Ill.Dec. 609, 619, 470 N.E.2d 1029, 1039 (1984), where the defendant acted in excess of his authority and the plaintiff brought an action to compel him to obey his statutory duties. Rooding does not allege that Peters' 60–day rule was outside

his delegated authority. However, there is a presumption that a state cannot violate its laws or the Constitution. *Herget Nat'l Bk.*, 86 Ill.Dec. at 486, 475 N.E.2d at 865. Therefore, a finding that Peters' actions were unconstitutional would permit this court to hear Rooding's claim.

 In *Currie*, the defendant was involved in a car accident while working. 170 Ill.Dec. at 301, 592 N.E.2d at 981. Jurisdiction was not found exclusive because the duties the defendant allegedly breached arose from his status as an automobile driver, not as a state employee. *Id.* The court in *Subacz v. Witkowski*, 1993 WL 541140 at *5–6 (N.D.Ill.), distinguished *Currie* and held that the plaintiff's claim that the defendant assaulted her while arresting her was exclusively within court of claims jurisdiction because the defendant's duty to arrest arose from his capacity as a state agent. The facts of *Currie* and *Subacz* are close. Both defendants' actions—driving and arresting—were part of and occurred during work. The distinction seems to be that while private individuals have duties as drivers, they do not conduct arrests. Peters' 60–day rule for IDOC is more like the act of arresting than driving because it is not within the realm of private individuals' actions. Moreover, judgment for Rooding "could operate to control the actions of the State or subject it to liability." *Currie*, 170 Ill.Dec. at 300, 592 N.E.2d at 980. However, because Rooding alleges that Peters violated the Constitution, and because count III essentially makes the same allegations as the other counts, for now Rooding's false imprisonment claim is not dismissed.

## CONCLUSION

The motion to dismiss is denied.