NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**14-800**

**THOMAS D. DAVENPORT, SR., ET UX.**

**VERSUS**

**CITY OF ALEXANDRIA**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 241,368
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Elizabeth A. Pickett, and John E. Conery, Judges.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

**Thomas D. Davenport, Jr.**
**The Davenport Firm, APLC**
**602 Murray Street**
**Alexandria, Louisiana 71301**
**(318) 445-9696**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Thomas D. Davenport, Sr., et ux.**

**Ricky L. Sooter**
**Jeremy C. Cedars**
**Provosty, Sadler, deLaunay, Fiorenza & Sobel, APC**
**Post Office Drawer 1791**
**Alexandria, Louisiana 71309-1791**
**(318) 445-3631**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **City of Alexandria**

**CONERY, Judge.**

Thomas D. Davenport Sr. and Dinah Lachney Davenport (the Davenports) appeal the April 4, 2014 judgment of the trial court which denied and dismissed with prejudice the Davenport's petition for declaratory judgment, temporary restraining order, and preliminary injunction, as amended. In its April 4, 2014 judgment, the trial court granted the mandatory injunction filed by the City of Alexandria (City), which required the Davenports to remove from their property, located at 3025 Madonna Drive, on or before June 27, 2014, the addition to their home, more fully shown on Exhibit A attached to and made part of the trial court's judgment.

In the alternative, the April 4, 2012 judgment required the Davenports to comply with the requirements of the International Residential Building Code, adopted by the State of Louisiana, and the City of Alexandria's Construction Development Department Building Code and to complete such work on the property as required by a building permit issued by the City on or before June 27, 2014. The Davenports failed to adopt the alternative option contemplated in the judgment and this appeal followed. The City has answered the appeal and seeks enforcement of the Mandatory Injunction. For the following reasons, we affirm and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

After a trial on the merits which began on March 18, 2014, on March 19, 2014, the trial court issued oral reasons for judgment, wherein it adopted the facts alleged in the City's memorandum. After a review of the record, we find that the facts are not in dispute and shall also adopt the facts as stated by the trial court:

What I'd like to -- does anybody have any questions or anything that they want to say before I render a verdict? I think everything, like Mr. Davenport said, it's already been said at trial.

I'm going to adopt the facts that were alleged in the City of Alexandria's memorandum. I don't think that there's really a lot of dispute about the facts. And, so, what I'm going to find as facts is the following: The Davenports, Mr. Thomas D. Davenport, Sr., and his wife acquired a home in at 20--3025 Madonna Drive in Alexandria, Louisiana, in 1968, and they paid $25,000 for the house on that day – in that year. The home on Madonna Street, Madonna Drive, included a one-car carport at the time they purchased it. Mr. Davenport claims to added a tin roof structure which is going to be referred to as the "lean-to" in 1969.

A driveway leaning--leading to the lean-to was added in 1973, and a slab was poured to that lean-to in 1980.

In March/April of 2011, Mr. Davenport, Sr., hired a contractor named Billy Fowler to remove the lean-to and extend the roof of the existing one car carport to create a two-car carport.

On April 11th, the City received a call from Ms. Betty Laurent - L-A-U-R-E-N-T, who was the Davenports' neighbor with a complaint about the construction of the new carport.

After confirming with the City permit technician, Pam Willis, that no building permit had been issued to the Davenports, the Superintendent of Construction Development for the City, Shirley Branham - B-R-A-N-H-A-M, prepared a standard cease and desist form with the correct date, address, cited code violation, and edited the noncompliance warning date. Ms. Branham then contacted the City building inspector, Chris Wiley, and asked him to visit the site, confirm the failure to obtain the permit, take photographs, and post the Cease and Desist order.

Mr. Wiley, then traveled to the Davenports' home, confirmed that they had not applied for a permit, and gave Mr. Davenport and his contractor application to go see the City to apply for a permit, a work permit. Mr. Wiley photographed the new construction and pointed out to Mr. Davenport that the new roofline appeared to be encroaching on the required five foot setback line. Mr. Wiley posted the Cease and Desist order on the home, but Mr. Davenport tore it down. After explaining that it was procedure to photograph the notice, Mr. Davenport held the notice for Mr. Wiley to photograph.

Within an hour of Mr. Wiley's visit to the home, the Davenports then went and met with Shirley Branham in her office to determine why a Cease and Desist order had been issued. After

2

explaining that the construction required a permit, Ms. Branham then explained her -- that her office could not issue a permit, because the inspection revealed a potential zoning violation of the five foot setback line encroachment. At that time, she directed the Davenports to visit Mr. Glenn Couvillion, the City Zoning Analyst, to review the setback requirements for that location and to try to resolve the issue.

Shortly thereafter, Ms. Branham sent the pictures taken by Chris Wiley to the Alex -- City of Alexandria surveyor and requested a field inspection to verify any setback encroachments.

The City surveyor confirmed that the new, that the new construction encroached on the five foot setback line. Ms. Branham then called the Davenports' contractor to inform them of the zoning violation and that the homeowner would have to seek a variance from the Board of Adjustments and Appeals.

Despite his failure to obtain a permit and being informed of the zoning violation, the Davenports completed the new construction.

On April 13, 2011, the Davenports filed a Petition for Declaratory Judgment and a Petition for a Temporary Restraining Order, a Preliminary Injunction, and a Permanent Injunction.

After that the City filed a Reconventional Demand seeking a Mandatory Injunction to have the violating structure removed.

Facts that are not in dispute are that Mr. Davenport, Sr., and his wife are owners of the immovable property and the home that's located at 3025 Madonna Street. There's no doubt that in 1969 he added a tin roof, which was a lean-to structure at 3025 Madonna Street, Madonna Drive that was adjacent to the one car carport that was in existence when they purchased their home. In 1973, Mr. Davenport added a driveway that was leading to the lean structure at 3025 Madonna. In 1980 he poured concrete that went under the lean-to located at that address. Then in the spring of 2011, he hired Billy Fowler, a contractor; to remove the lean-to, extend the roof of the one-car carport to create a two-car carport. Then on April the 11th, the City received a call, and the complaint about this matter started and that's when everything happened that led to this suit.

The trial court then issued its reasons for ruling on the record and made findings of fact:

That was not a reroofing. That was a destroying of the old structure and building a new structure. And my finding -- that's my finding of fact, and I think that the law under the City ordinance requires if it's going to be a new building, then they have to comply

3

with the City code that's in effect at the time, and Article -- Section 28-7.1 says it is the intent of this chapter to permit these nonconformities to continue until they are removed and not to encourage their survival except by an application for an adjustment or appeal. So, the City's going to allow these people when the Code took effect to keep the buildings there that are nonconformity, but the minute that they're removed or there is a substantial alteration to them, they're going to have to comply with what the Code says because they do not want to encourage their survival…

So, I think that what happened – I was thinking last night, when I was going through all this that what happened, when they tore down the old one, that pushed the reset button in a way, is what I would call it. So, it got reset. It was a nonconforming [structure]. It was destroyed. The reset button was pushed and then they had to build a conforming [structure] with the code that was in effect at the time.

So, based upon those findings of fact, I'm going to deny the request by the … by the plaintiff for declaratory judgment. I do not find that there was a … discriminatory application of the City Code by the defendant.

The trial court then began a lengthy discussion with counsel which resulted in the alternative portion of the judgment. The alternative measures, crafted by the trial court, would have required, according to the International Residential Building Code, adopted by the State of Louisiana, that the Davenports meet a two foot setback for the carport addition and then the remaining three feet must meet the fire rating required under the state code. During the discussion, the trial court took into consideration the number of years the Davenports had lived in the residence and the costs associated with the project. The portion of the trial court's judgment relating to the alternative remedy it crafted stated:

[H]owever if Plaintiffs obtain a building permit for the modification this structure, and comply with the requirements of the City of Alexandria's Construction Development Department Building Code and International Residential Building Code, the Plaintiffs are not required to abate and remove the entire structure at issue, but are required to perform and complete such work that is outline[ed]in the building permit issued by the City of Alexandria's Construction Development Department, on or before the 27th day of June.

The record reflects that both the trial court and counsel appeared to believe the matter had been resolved at the close of the hearing. A plan was in place to have Mr. Davenport sign a homeowner's affidavit, which would have allowed Mr. Davenport to serve as his own general contractor and hire Mr. Billy Fowler, the unlicensed contractor who constructed the second carport, to complete the project in accordance with the restrictions imposed. The trial court expressed its agreement with this plan and its confidence in Mr. Fowler's ability to carry out the compromise.

The parties agreed that counsel for the City would draft a judgment, which would be submitted to counsel for Mr. Davenport for approval. Once approved, counsel for the City would hold the original for the ninety-day period, and the parties would reconvene in chambers to review the status of the construction. In addition, there were some housekeeping measures required which were addressed in the form of an addition to the judgment by the trial court overruling the Board of Adjustments and Appeals denial of a variance to the Davenports, which allowed an appeal to the district court.

Despite a herculean effort by the trial court to resolve the dispute, the Davenports did not comply with the alternative resolution proposed by the trial court and counsel. The judgment signed by the trial court on April 4, 2014, does not contain the signature of Mr. Davenport's attorney, and this timely appeal by Mr. Davenport followed. Thus, the record reflects that the compromise was not accepted by the Davenports. The City answered the appeal seeking enforcement of the April 4, 2014 judgment granting the City's mandatory injunction requiring the Davenports to:

abate and remove from the property located at 3025 Madonna Drive -- all building materials, including but not limited to lumber, decking, shingles, plywood and insulation, which was incorporated into the addition to the home since February, 2011 as shown in the area highlighted in gray on Exhibit A, attached hereto and made a part of this Judgment.

## DAVENPORTS' ASSIGNMENTS OF ERROR

On appeal, the Davenports assign the following as error:

(1)    The Trial Court committed legal error by rendering a conclusion of law that the Appellant's carport is not a nonconforming structure when the case law is clear on this issue. In the alternative, the Trial Court committed manifest error by finding the carport was not a nonconforming structure.

(2)    The Trial Court committed legal error by rendering a conclusion of law that the Appellant's carport could not be reroofed, repaired, or restored when the *Code of Ordinances* allow for repairs. In the alternative, the Trial Court committed manifest error by ruling the carport could not be reroofed, repaired or restored.

(3)    The Trial Court committed legal error by failing to apply the exemptions as required by well-established law of this State.

(4)    The Trial Court committed legal error by concluding the Appellant was not discriminated against by the City.

(5)    The Trial Court committed legal error by finding or concluding the City's Code and actions were constitutional.

## CITY'S ASSIGNMENT OF ERROR

On appeal, the City alleges the following as error:

(1)    The trial court erred in allowing Plaintiffs only to tear out the Portions of the offending structure to the five-foot line and not abating the entirety of the structure.

## LAW AND DISCUSSION

### *Standard of Review*

"[A]ppellate jurisdiction of a court of appeal extends to law and facts."

La.Const. art. 5, § 10(B). The appellate court must determine whether the trial

6

court committed an error of law or made a factual finding that was manifestly erroneous or clearly wrong. *Gibson v. State*, 99-1730 (La. 4/11/00), 758 So.2d 782, *cert. denied,* 531 U.S. 1052, 121 S.Ct. 656 (2000). The reviewing court must review the record in its entirety to make this determination. *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993).

However, statutory interpretations are questions of law. *Shell v. Wal-Mart Stores, Inc.*, 00-997 (La.App. 3 Cir. 3/21/01), 782 So.2d 1155, *writ denied*, 01-1149 (La. 6/15/01), 793 So.2d 1244. Although a reviewing court defers to a trial court's reasonable decision on a question or matter properly within the trial court's discretion, if the trial court's decision is based on an erroneous interpretation or application of the law, such an incorrect decision is not entitled to deference. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983).

## LAW AND ANALYSIS

### *The City's Statutory Authority*

There is no dispute that the City has the authority pursuant to La.R.S. 40:1730.21 *et seq.* to regulate, within its corporate limits, construction, alterations, and repair of every structure or appurtenance connected or attached thereto. In addition, in connection with this authority, the City is also required under state law, pursuant to La.R.S. 33:101 *et seq.* and La.R.S. 33:4721 *et seq.*, to promote the health, safety, convenience, and general welfare of the City's residents.

To implement this authority, Alexandria, Louisiana, Code of Ordinances 28-6.1 creates an administrative entity with the ability to enforce the City's ordinances, including notifying any person in writing of a violation and ordering any action necessary to correct the violation, including the cease and desist order issued to the Davenport's after the complaint from the Davenport's neighbor, Ms.

7

Betty Laurent, about the construction of the second carport. The complaint prompted Shirley Branham, the City's Superintendent of Construction Development, to confirm with City permit technician, Pam Willis, that no building permit had been issued to the Davenports for the construction of the second carport.

Ms. Branham then instructed the City's building inspector, Chris Wiley, to visit the Davenport home and determine if the new roof line of the second carport was encroaching on the required five-foot setback, pursuant to Alexandria, Louisiana, Code of Ordinances 28-3.7(E)(2), which is applicable to the Davenport's Single Family Home. The ordinance provides, "Side, interior: Five (5) feet for all buildings and swimming pools unless written consent has been obtained from the adjacent property owner, subject to Sec. 28-3.26(K), zero lot line." Upon his determination that the new roof line was in violation of Alexandria, Louisiana, Code of Ordinances 28-3.7(E)(2), Mr. Wiley issued a cease and desist order and instructed the Davenport's to seek the necessary building permit, which required that they obtain a variance from the City's Board of Adjustments and Appeals. The Davenport's failed to obtain the necessary variance and completed the construction of the second carport in violation of the cease and desist order.

### The Davenport's Assignments of Error One-Three

At trial the Davenport's admitted that the addition of the second carport was in violation of Alexandria, Louisiana, Code of Ordinances 28-3.7(E)(2). The focus of both their arguments at trial and their first three errors on appeal is that the second carport addition is exempt from the provisions of the ordinance because it is a non-conforming structure. This court does not agree.

A non-conforming structure is defined in Alexandria, Louisiana, Code of Ordinances 28-7.4 and states:

> Where a lawful structure exists that could not be built under the terms of this chapter by reason of restrictions on area, lot open space, height, yards, its location on the lot, or other requirements concerning the structure, such structure may be continued so long as it remains otherwise lawful, subject to the following provisions:
>
> A. No such nonconforming structure maybe enlarged or altered in a way that increases its nonconformity, but any structure or portion thereof may be altered to decrease its nonconformity.
>
> B. Should such nonconforming structure or nonconforming portion structure be destroyed by any means to an extent of more than fifty (50) per cent of its replacement cost at time of destruction, it shall not be reconstructed except in conformity with the provisions of this chapter.
>
> C. Should such structure be moved for any reason for any distance whatever, it shall thereafter conform to the regulations for the district in which it is located after it is moved.

Alexandria, Louisiana, Code of Ordinances 28-7.1 provides the purpose and intent for allowing nonconforming structures to exist and states in pertinent part:

> A.     Within the districts established by this chapter or amendments that may later be adopted there exist (1) lots, (2**) structures**, (3) uses of land and structures, and (4) characteristics of use, which were lawful when they were established, but which would be prohibited, regulated or restricted under the terms of this chapter or future amendment. **It is the intent of this chapter to permit these nonconformities to continue until they are REMOVED, but not to encourage their survival, except by application of a special exception to the board of adjustments and appeals.**
>
> B.     **It is further the intent of this chapter that nonconformities shall not be enlarged upon, expanded or extended, nor be used as grounds for adding other structures** or uses prohibited elsewhere in the same district.

(Emphasis added.)

It is clear that, when the Davenports bought their home in 1968, it only had a one car carport.  In 1969, Mr. Davenport added the "lean-to" as a separate addition

9

to the existing carport and it encroached into the five-foot setback. In 1973, the Davenport's paved a driveway to the "lean-to," and in 1980, poured a slab under the "lean-to." All of this work was done prior to the adoption of Alexandria, Louisiana, Code of Ordinances 28-3.7(E)(2), which requires a five foot setback. Thus, the "lean-to" was a non-conforming structure which was grandfathered in and allowed to remain as long as it was not **removed** pursuant to Alexandria, Louisiana, Code of Ordinances 28-7.1.

The testimony of Mr. Fowler, the Davenport's contractor, clearly reflects that the "lean-to" was torn down, except as the trial court determined, "The only thing that was left of the old lean-to was electrical service and one beam. Mr. Fowler could not remember if they took that beam down, if they raised it or if it was taken off." The trial court's determination that the "lean-to" was voluntarily removed is confirmed by the before and after pictures of the Davenport home, which show a full size second carport. Thus, the Davenport's statement to the City that they only intended to re-roof the "lean-to," which did not require a permit, was not completely accurate.

The Davenports argue the application of Alexandria, Louisiana, Code of Ordinances 28-7.4(B), which allows them to rebuild a nonconforming structure if less than fifty percent of the replacement cost of the structure was destroyed. The application of this section of the Alexandria, Louisiana, Code of Ordinances would require that the "lean to" was a part of the original house purchased in 1968 by the Davenports and that a portion of the "lean-to" was destroyed. The facts are clear that the "lean-to" was added by Mr. Davenport in 1969 and was voluntarily removed by the Davenports during the construction of the second carport.

Therefore, the trial court correctly determined that Alexandria, Louisiana, Code of Ordinances 28-7.4(B) was not applicable.

The findings of fact by the trial court and its application of the Alexandria, Louisiana, Code of Ordinances in force at the time of the construction of the second carport support the trial court's conclusion that the "lean-to" was a nonconforming structure that was voluntarily removed by the Davenports. In completing the second carport without a permit and in violation of a cease and desist order, the trial court had no choice but to grant the City's request for a mandatory injunction pursuant to Alexandria, Louisiana, Code of Ordinances 28-6.1. Therefore, we find the Davenport's first three assignments of error are without merit.

### The Davenport's Assignments of Error Four and Five

The Davenports maintain that the "trial court committed legal error" when it found that they were "not discriminated against by the City," and that the "*City's Code of Ordinances* and actions were constitutional, when the Code gives unfettered and unbridled discretion to a City Employee, who determines who receives a permit without any uniform standards to do so."

The underlying basis of both of their claims is that their neighbor, Ms. Laurent, was treated differently by the City when she was required to make repairs to the roof of her home after it was damaged by a tornado in 2012. The ordinance which applies to the repairs of non-conforming structures such as Ms. Laurent's roof and Mr. Davenport's "lean-to," states, "A non-conforming structure may be **repaired** and maintained so long as any such repair or maintenance does not in any way increase its nonconformity and it remains otherwise lawful." (Emphasis added.)

11

In the case of Ms. Laurent's roof, damaged by the tornado, she was allowed to repair the portion of her roof that may have been in violation of the five-foot setback required by Alexandria, Louisiana, Code of Ordinances 28-3.7(E)(2), based on the exception in Alexandria, Louisiana, Code of Ordinances 28-7.7, which allows repairs to nonconforming structures. Ms. Laurent began repairs to her roof without a permit from the City. However, when a complaint was filed with the City, she ceased the work on the roof repair until the City issued her a permit which did not require a variance. Ms. Laurent's treatment by the City, which did not require her to submit plans or obtain a variance, is in stark contrast to the situation of the Davenports.

The Davenports informed the City that they intended to re-roof the "lean-to" structure, added in 1969, to their original one carport home purchased in 1968. In 1973, a driveway was added leading to the "lean-to," and a slab was poured to that structure in 1980. The testimony and photographs clearly confirm that the "lean-to" was not just re-roofed, but was removed and replaced by a second completed carport addition. Thus, we agree with the trial court's findings that the Davenports' construction of a second carport and Ms. Laurent's repairs to her roof occasioned by tornado damage required the application of different portions of the Alexandria, Louisiana, Code of Ordinances.

A panel of the first circuit succinctly stated the necessary requirements for the Davenports' claims of discrimination and the unconstitutional application of the Alexandria, Louisiana, Code of Ordinances:

> The Fourteenth Amendment and La. Const. art. I, § 3 provide that all persons are entitled to equal protection of the law, and require that "persons similarly situated receive like treatment." *Whitnell v. Silverman,* 95–0112, pp. 9–10 (La.12/6/96), 686 So.2d 23, 29–30. But the equal protection provisions of the federal and state constitutions

> do not require absolute equality or precisely equal advantages. *McCormick v. Hunt,* 328 So.2d 140, 142 (La.1976).
>
> The guarantees of equal protection under the federal and state constitutions differ, and therefore usually require separate analysis as to whether each has been violated. *Progressive Security Insurance Company v. Foster,* 97–2985, p. 17 (La.4/23/98), 711 So.2d 675, 685–86. However, where no fundamental or express constitutional right or "suspect" class (such as race or religion), nor any other enumerated class such as birth, age, sex, culture, or political affiliation, is alleged as the basis for discrimination, the use of another classification is subject to the minimal or lowest level of scrutiny under the guarantees of both constitutions. *American International Gaming Association,* 00–2864 at p. 15, 838 So.2d at 17. Such a classification is unconstitutional only if proven to be not rationally related to any legitimate state interest. *Progressive Security Insurance Company,* 97–2985 at pp. 18–19, 711 So.2d at 686.

*Johansen v. Louisiana High Sch. Athletic Ass'n*, 04-0937, pp. 9-10 (La.App. 1 Cir. 6/29/05), 916 So.2d 1081, 1088-89.

In its reasons for judgment, the trial court found that the Davenports had not been singled out by the City for "discriminatory application of the City Code." The City, after receiving the complaint from Ms. Laurent, was required to respond and address the violation of the five-foot setback required under the ordinance in effect, Alexandria, Louisiana, Code of Ordinances 28-3.7(E)(2). Additionally, the court stated, "I do not find that there was a -- discriminatory application of the City Code by the defendant. They didn't drive up and down the street and see this and decide we're going to mess with the Davenports."

The trial court also found that, had the City failed to respond to the complaint made by Ms. Laurent, and had the Davenport's house caught fire and spread to the neighbor's house, "the City would be responsible, or would be liable for any damages that she would have received along with Mr. Davenport." The trial court recognized the City's responsibility, pursuant to La.R.S. 33:101 *et seq.* and La.R.S. 33:4721 *et seq.*, to promote the health, safety, convenience, and

general welfare of the City's residents and stated, "So, when you live in the city with a bunch of houses, this is obviously part of the police power that the city can use to try and prevent fires in the city."

The Davenports do not fall into any of the protected classes that have a fundamental or express constitutional right. Therefore, their claims are subject to "the minimal or lowest level of scrutiny," and are "unconstitutional only if proven to be not rationally related to any legitimate state interest." *Progressive Security Ins. Co. v. Foster*, 97-2985, pp. 18-19 (La. 4/23/98), 711 So.2d 675, 686. The trial court correctly found that the protection of the residents of a city from an additional threat of fire is per se a "legitimate state interest," which could not be ignored by the City. *Id.* Thus, we also affirm the trial court's ruling denying the Davenports' claims of discrimination and the unconstitutional application of the Alexandria, Louisiana, Code of Ordinances and find their assignments of error four and five to be without merit.

### *The City's Assignment of Error*

In its assignment of error, the City asserts that the trial court erred in crafting an alternative judgment which would have allowed the Davenports "only to tear out the portions of the offending structure to the five-foot line and not abating the entirety of the structure." At oral argument, in responding to questioning by the panel, the City requested that the mandatory injunction granted by the trial court in its April 4, 2014 judgment be affirmed, which requires the Davenports to remove the addition to their home, attached as Exhibit A to the trial court's judgment.

The Davenports failed to comply by June 27, 2014, the deadline stated in the trial court's alternative judgment. This is unfortunate as the trial court expended considerable time and effort in seeking to reach a compromise that would satisfy

both parties, comport with the law, and result in reduced costs and modifications to the Davenport home.

This court is left with no other alternative than to find that the City's request has merit and thus we affirm that portion of the April 4, 2014 judgment of the trial court granting the mandatory injunction filed by the City in reconvention, finding that the alternative judgment of the trial court has been rendered moot.

The affirmation of the trial court's judgment granting the City's reconventional demand for a mandatory injunction requires that the Davenports:

> [S]hall abate and remove from the property located at 3025 Madonna Drive and described as follows:
>
>> Lot "A" of the Subdivision of Lots 6, 7 and 8 of block 9 of Mimosa Place (as per plat recorded in CB 425-529), Alexandria, Rapides Parish, Louisiana as per PB 5-119, records of Rapides Parish Louisiana.
>
> As recorded at Conveyance Book 718 Page 661, Entry No. 551566, on or before **June 27, 2014** all building materials, including but not limited to lumber, decking, shingles, plywood and insulation, which was incorporated into the addition to the home since February, 2011 as shown in the area highlighted in gray on Exhibit A, attached hereto and made part of this Judgment.

Due to the appeal, the June 27, 2014 date has expired. We, therefore, remand the case to the trial court for a date to be fixed for the Davenports to comply with the mandatory injunction in accordance with the judgment of the trial court and consistent with this court's ruling.

### CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment granting the City of Alexandria's mandatory injunction against Thomas D. Davenport, Sr. and Dinah Lachney Davenport ordering abatement of the entirety of the structure attached as Exhibit A to the trial court's judgment. We also remand the case to the

15

trial court for a date to be fixed for the Davenports to comply with the mandatory injunction in accordance with the judgment and in accordance with this court's ruling. Costs of this appeal are assessed to Thomas D. Davenport, Sr. and Dinah Lachney Davenport.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

**This opinion is NOT DESIGNATED FOR PUBLICATION.** Uniform Rules—
Courts of Appeal, Rule 2–16.3.